IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWARD ZALOGA, D.O., C.P.A., and JEANNE ZALOGA, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF MOOSIC, MOOSIC BOROUGH COUNCIL, MOOSIC BOROUGH PLANNING COMMISSION, MOOSIC BOROUGH ZONING BOARD OF ADJUSTMENTS, JOSEPH MERCATILI, individually and in his official capacity as President of Moosic Borough Council, JOSEPH DENTE, individually and in his official capacity as Vice President of Moosic Borough Council and member of the Moosic Borough Planning Commission, THOMAS HARRISON, individually and in his official capacity as Moosic Borough Manager, BRYAN FAUVER, individually and in his official capacity as Chairman of Moosic Borough Planning Commission, and JAMES DURKIN, individually and in his official capacity as Moosic Borough Zoning and Enforcement Officer, | : | Civil Action No. _____ |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | **(Electronically Filed)** |
| Defendants. | : | |

## **COMPLAINT**

PLAINTIFFS, EDWARD ZALOGA, D.O., C.P.A. and JEANNE ZALOGA, by and through their attorneys, DUANE MORRIS LLP, hereby complain of the BOROUGH OF MOOSIC, MOOSIC BOROUGH COUNCIL, MOOSIC BOROUGH PLANNING COMMISSION, MOOSIC BOROUGH ZONING BOARD OF ADJUSTMENTS, JOSEPH MERCATILI, individually and in his official capacity as President of Moosic Borough Council, JOSEPH DENTE, individually and in his official capacity as Vice President of Moosic Borough

Council and member of the Moosic Borough Planning Commission, THOMAS HARRISON, individually and in his official capacity as Moosic Borough Manager, BRYAN FAUVER, individually and in his official capacity as Chairman of Moosic Borough Planning Commission, and JAMES DURKIN, individually and in his official capacity as Moosic Borough Zoning and Enforcement Officer (hereinafter, collectively, "DEFENDANTS") as follows:

## PARTIES

1. The Plaintiff, EDWARD ZALOGA, D.O., C.P.A. ("DR. ZALOGA"), is an adult and competent individual residing at 910 John's Drive, Moosic Borough, County of Lackawanna, Commonwealth of Pennsylvania.

2. The Plaintiff, JEANNE ZALOGA, is an adult and competent individual residing at 910 John's Drive, Moosic Borough, County of Lackawanna, Commonwealth of Pennsylvania.

3. At all relevant times herein, DR. ZALOGA is and continues to be the sole shareholder of Correctional Care, Incorporated ("Correctional Care"), a health and medical company that provides contracted services to correctional facilities. Correctional Care is located at 4101 Birney Avenue, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania.

4. At all relevant times herein, Lackawanna County, through the Lackawanna County Prison Board, contracted with Correctional Care to provide medical and health services to Lackawanna County Prison in exchange for valuable consideration.

5. The Defendant, BOROUGH OF MOOSIC ("BOROUGH"), is a municipal subdivision of the Commonwealth of Pennsylvania, having its principal governmental office at 715 Main Street, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania.

6. The Defendant, MOOSIC BOROUGH COUNCIL ("COUNCIL"), is the body responsible for supervising, governing, and conducting the affairs of the BOROUGH.

2

COUNCIL has its principal governmental office at 715 Main Street, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania.

7. The Defendant, MOOSIC BOROUGH PLANNING COMMISSION ("COMMISSION"), is the body responsible for, among other things, reviewing plans for development and making recommendations to COUNCIL, supervising and enforcing zoning ordinances and codes, issuing zoning permit requests, conducting zoning hearings, and handling other zoning matters. COMMISSION has its principal governmental office at 715 Main Street, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania.

8. The Defendant, MOOSIC BOROUGH ZONING BOARD OF ADJUSTMENTS ("ZONING BOARD"), is the body responsible for, among other things, hearing appeals of individuals who have been denied permits because of violations of zoning ordinances. ZONING BOARD has its principal governmental office at 715 Main Street, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania.

9. The Defendant, JOSEPH MERCATILI ("MERCATILI"), is the President of Moosic Borough Council, County of Lackawanna, Commonwealth of Pennsylvania. MERCATILI is an adult and competent individual residing at 3900 Winfield Avenue Moosic, Pennsylvania 18507.

10. The Defendant, JOSEPH DENTE ("DENTE"), is the Vice President of the Moosic Borough Council and member of the Moosic Borough Planning Commission, County of Lackawanna, Commonwealth of Pennsylvania. DENTE is an adult and competent individual residing at 225 Spring Street, Moosic, Pennsylvania 18507.

11. The Defendant, THOMAS HARRISON ("HARRISON"), is the Moosic Borough Manager, County of Lackawanna, Commonwealth of Pennsylvania. HARRISON is an adult and competent individual residing at 628 Minooka Avenue, Moosic, Pennsylvania 18507.

3

12. The Defendant, BRYAN FAUVER ("FAUVER"), is the Chairman of the Moosic Borough Planning Commission, County of Lackawanna, Commonwealth of Pennsylvania. FAUVER is an adult and competent individual residing at 3703 Winfield Avenue, Moosic, Pennsylvania 18507.

13. The Defendant, JAMES DURKIN ("DURKIN"), is the Moosic Borough Zoning and Code Enforcement Officer, County of Lackawanna, Commonwealth of Pennsylvania. Durkin is charged with the duty of investigating violations of BOROUGH zoning ordinances and issuing enforcement notices/citations in accordance with the provisions of BOROUGH zoning ordinances and codes. DURKIN is an adult and competent individual residing in Moosic Borough, Pennsylvania 18507.

## JURISDICTION AND VENUE

14. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the First and Fourteenth Amendments of the United States Constitution.

15. This Court has jurisdiction over the federal claims stated herein pursuant to 28 U.S.C. §§ 1331 and 1343.

16. The Court has jurisdiction over the supplemental claims arising under Pennsylvania law pursuant to 28 U.S.C. § 1367.

17. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

18. At all times material hereto, and with respect to all actions described herein, DEFENDANTS were acting under color of state law and color of their authority as officials of the BOROUGH, COUNCIL, COMMISSION, and/or ZONING BOARD, and as agents, state actors, and entities of the BOROUGH, COUNCIL, COMMISSION, and/or ZONING BOARD pursuant to the specific actions alleged in this COMPLAINT.

4

# FACTUAL BACKGROUND

19. PLAINTIFFS own a residential property located at 910 John's Drive, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania. PLAINTIFFS' home is located in an R-1 Residential District.

20. Jack Williams Tire & Auto Service Center ("Jack Williams Tire") is located at 700 Rocky Glen Road, Moosic Borough, Lackawanna County, Commonwealth of Pennsylvania and is currently located in a Manufacturing Zoning District under a BOROUGH zoning ordinance. Among other things, the Jack Williams Tire facility at 700 Rocky Glen Road is or was a distribution center, retail tire store, auto repair shop, and serves as Jack Williams Tire corporate offices.

21. PLAINTIFFS' home and property is located immediately adjacent to the Jack Williams Tire facility and property located at 700 Rocky Glen Road.

22. On the original developer's subdivision map, dated May 20, 1965, and recorded on September 24, 1965, in the Office of the Recorder of Deeds in Lackawanna County, PLAINTIFFS' and Jack Williams Tire's properties are separated by a small strip of land identified as Carey Lane.

23. Notwithstanding its name, Carey Lane is a very narrow strip of undeveloped land of natural grasses and various vegetation consistent with and common to undeveloped real property in the area. Upon information and belief, Carey Lane was never and has never been developed since the creation of the original developer's subdivision map, dated May 20, 1965.

24. Since at least 1994, PLAINTIFFS have owned their home and property located at 910 John's Drive.

5

25. In or about 1999, PLAINTIFFS constructed an addition to their home that encroaches on a portion of Carey Lane.  PLAINTIFFS have exclusively, visibly, notoriously, distinctly, and in a legally-hostile manner used the portion of Carey Lane that runs along PLAINTIFFS' property line with a manifest intent to possess the land for themselves.

26. Indeed, prior to the construction of the addition to PLAINTIFFS' home, DENTE, acting in his official capacity, reviewed and approved the plans for the proposed addition.  Those plans included the size and specific location of the addition.  The segment of the addition that encroaches on a portion of Carey Lane was eventually constructed at PLAINTIFFS' home consistent with the plans reviewed and approved by DENTE.

27. PLAINTIFFS purchased the home and property located at 910 John's Drive in or about 1994.  Collectively, PLAINTIFFS and the prior owners of the home and property located at 910 John's Drive adversely possessed the portion of Carey Lane that runs along PLAINTIFFS' property line in a manner that was actual, exclusive, visible, notorious, distinct and legally hostile to the BOROUGH for at least 21 continuous years.

28. When title of 910 John's Drive was conveyed to PLAINTIFFS, the conveyance included the prior owners' adverse possession of said portion of Carey Lane that runs along PLAINTIFFS' property line.  As such, PLAINTIFFS and the prior owners of the property share privity of title.

29. In early 2005, PLAINTIFFS learned that Jack Williams Tire was engaged in tire retredding/recapping manufacturing work at the 700 Rocky Glen Road facility through another entity, Wing Foot Commercial Tire, Inc., and that Jack Williams Tire was planning a further expansion of its manufacturing plant and distribution facility on the property directly adjacent to PLAINTIFFS' property.

30. As a result of the retredding/recapping work performed at the Jack Williams Tire facility, PLAINTIFFS' property was covered in rubber particles, soot, smoke, and offensive and noxious rubber odors produced from the facility. These contaminants adversely impacted PLAINTIFFS' home and property, as well as the homes and properties of PLAINTIFFS' neighbors, all of whom were located in the same R-1 residential zone as PLAINTIFFS.

31. On a daily basis, idling trucks sat parked for hours waiting to enter the Jack Williams Tire facility, and the noise pollution that came from the retredding/recapping machines was both offensive and overwhelming to PLAINTIFFS and their neighbors.

32. On August 5, 2005, DR. ZALOGA sent a petition signed by eight of PLAINTIFFS' neighbors to John Segilia, then-Mayor of Moosic Borough ("Segilia," now deceased), MERCATILI, HARRISON, and COMMISSION members to publicly protest the significant public nuisance and zoning violations committed by Jack Williams Tire.

33. Under Moosic Borough Zoning Ordinance § 9.510, DURKIN, as the Zoning and Code Enforcement Officer, was required to initiate an investigation upon receiving a complaint. Upon information and belief, DURKIN and the BOROUGH knowingly, willfully, and intentionally violated Moosic Borough Zoning Ordinance § 9.510 by failing and refusing to initiate an investigation following receipt of the complaint from DR. ZALOGA and PLAINTIFFS' neighbors and, instead, knowingly, willfully, and intentionally permitting the zoning violations by Jack Williams Tire to continue.

34. On August 23, 2005, DR. ZALOGA sent another petition, this one signed by 23 neighbors, to the COMMISSION to publicly protest the zoning violations that were continuing to be committed by Jack Williams Tire. In this petition, DR. ZALOGA and his 23 neighbors specifically requested an investigation. Upon information and belief, the COMMISSION and the

BOROUGH knowingly, willfully, and intentionally violated Moosic Borough Zoning Ordinance § 9.510 by not initiating an investigation and, instead, knowingly, willfully, and intentionally permitted the violations by Jack Williams Tire to continue.

35. On September 7, 2005, DR. ZALOGA sent a letter to DURKIN requesting an investigation of zoning violations occurring at the Jack Williams Tire facility. Upon information and belief, DURKIN and the BOROUGH knowingly, willfully, and intentionally violated Moosic Borough Zoning Ordinance § 9.510 by not initiating an investigation and, instead, knowingly, willfully, and intentionally permitted zoning violations by Jack Williams Tire to continue.

36. On October 3, 2005, the Pennsylvania Department of Environmental Protection ("DEP") issued a "Notice of Violation" to Wing Foot Commercial Tire following its inspection of the Jack Williams Tire facility. Among other things, the Notice of Violation stated that DEP verified the existence of contaminants from the Jack Williams Tire facility as a result of the "tire buffing operation that is exhausted to the ambient air through a cyclone collector."

37. In October 2005, Jack Williams Tire filed an application with the COMMISSION seeking approval of its Proposed Land Development Plan ("Proposal"), which proposed to construct a 49,665 square foot addition ("Addition") to its existing 85,800 square foot facility. The Proposal would allow Jack Williams Tire to dramatically expand its existing operations, despite Jack Williams Tire's continued violations of Moosic Borough zoning ordinances.

38. According to Moosic Borough Zoning Ordinance § 7.250, the Jack Williams Tire proposed Addition exceeded the maximum permitted size increase of 50% of existing building space.

39. On October 26, 2005, the COMMISSION verbally denied the Proposal submitted by Jack Williams Tire.

40. On December 6, 2005, DR. ZALOGA sent a letter to the COMMISSION requesting that the COMMISSION memorialize its verbal denial of the Proposal in writing per the requirements of the Pennsylvania Municipalities Planning Code.  Without explanation, the COMMISSION refused to place its denial in writing.  As a result, Jack Williams Tire obtained an order from the Court of Common Pleas reversing the COMMISSION'S verbal denial of the Proposal as a "deemed approval."

41. Despite the continued zoning violations being committed by Jack Williams Tire and the admitted zoning violations to be committed by Jack Williams Tire as a consequence of its Proposal, the COMMISSION knowingly, willfully, and intentionally disregarded its obligation to memorialize its denial of the Proposal under the Municipalities Planning Code, which, as expected, provided Jack Williams Tire a tacit basis to obtain a deemed approval.

42. On January 16, 2006, DR. ZALOGA sent a letter to the COMMISSION regarding the significant public nuisance and zoning violations being committed by Jack Williams Tire.  Upon information and belief, the COMMISSION and BOROUGH knowingly, willfully, and intentionally violated Moosic Borough Zoning Ordinance § 9.510 by failing and refusing to initiate an investigation following receipt of DR. ZALOGA's complaint and, instead, knowingly, willfully, and intentionally permitted the violations by Jack Williams Tire to continue.

43. As a result of the BOROUGH and the COMMISSION'S repeated failure and willful refusal to respond to DR. ZALOGA'S requests for an investigation, DR. ZALOGA sent a letter on June 5, 2006 to the COMMISSION requesting a hearing to address the ongoing significant public nuisance elements and zoning violations being committed by Jack Williams Tire, which

nuisance and violations negatively impacted and damaged PLAINTIFFS and PLAINTIFFS' use and enjoyment of their property.

44. From June 2006 through May 2007, DR. ZALOGA made repeated verbal requests to various BOROUGH, COUNCIL, COMMISSION, and ZONING BOARD officials to place them on formal notice of the ongoing ordinance violations being committed by Jack Williams Tire, and DR. ZALOGA repeatedly requested an investigation of these violations. Upon information and belief, neither the BOROUGH, COUNCIL, COMMISSION, or ZONING BOARD ever initiated any such investigation.

45. In February 2007, Jack Williams Tire submitted a Land Development Plan ("Plan") prepared by Trade Eastern, Inc. to the COMMISSION for its proposed 49,665 square foot Addition. The Plan violated Moosic Borough Zoning Ordinance § 7.250 because the proposed Addition exceeded the maximum permitted size increase of 50% of existing building space.

46. Under the Plan, the Addition – where, among other things, tractor-trailer and other commercial and industrial trucks and vehicles would idle and/or dock for the purpose of unloading their cargo – would be situated immediately adjacent to the rear side portion of PLAINTIFFS' property where PLAINTIFFS' bedrooms and swimming pool are located.

47. After Jack Williams Tire submitted the Plan to the COMMISSION, DR. ZALOGA notified Jack Williams Tire that he was concerned about the noise and other public nuisances that would be generated by the tractor-trailer trucks and other commercial vehicles that would be idling, docking and/or unloading their goods at the Addition.

48. On March 8, 2007, DR. ZALOGA attended a hearing held by the Lackawanna County Planning Commission. At the hearing, DR. ZALOGA raised objections to the potential approval of the Jack Williams Tire Plan by the COMMISSION.

10

49. On April 12, 2007, DR. ZALOGA attended a hearing held by the Lackawanna County Planning Commission.  At the hearing, DR. ZALOGA raised objections to the potential approval of the Jack Williams Tire Plan by the COMMISSION.

50. On April 25, 2007, DR. ZALOGA attended a hearing held by the COMMISSION.  At the hearing, DR. ZALOGA objected to the Jack Williams Tire Plan on the grounds that: (a) Jack Williams Tire intended to utilize the Addition as a distribution center, which is a use prohibited in the Manufacturing Zoning District; (b) the Plan does not provide sufficient parking for the existing facility and Addition in accordance with BOROUGH zoning ordinances; and (c) the Plan fails to contain and identify those improvements adjacent to PLAINTIFFS' property.  DR. ZALOGA also publicly requested that the COMMISSION conduct "due diligence" on the Jack Williams Tire Plan.

51. Despite the objections raised by DR. ZALOGA at the hearing, the COMMISSION passed a resolution at the hearing granting conditional land development approval of the Plan (the "Resolution").

52. On April 25, 2007, after the hearing, DR. ZALOGA met with journalist Ms. Stephanie Longo to discuss his grievances with the COMMISSION and BOROUGH and their willful and intentional refusal to properly consider the facts and law affecting the Jack Williams Tire Plan.

53. On April 27, 2007, DENTE sent a letter to Thomas MacNeely, Esq., counsel representing the PLAINTIFFS, to inform MacNeely that the COMMISSION granted Jack Williams Tire land development approval subject to certain conditions.  The COMMISSION granted Jack Williams Tire approval despite the ongoing zoning violations committed by Jack Williams Tire and the fact that the Addition violated Moosic Borough Zoning Ordinance § 7.250.

54. On May 8, 2007, DR. ZALOGA sent a petition, signed by 63 neighbors, to MERCATILI to publicly protest the COMMISSION'S willful and intentional refusal to properly consider the law and facts in granting Jack Williams Tire a conditional land development approval.  Upon information and belief, MERCATILI, the BOROUGH, and the COMMISSION willfully and intentionally took no action as a result of this petition.

55. On May 8, 2007, DR. ZALOGA attended a COUNCIL hearing that was open to members of the public, in which DR. ZALOGA attempted to publicly protest the conduct of the COMMISSION and its officials.  Although the hearing was open to the public, COUNCIL members willfully and intentionally refused to give DR. ZALOGA an opportunity to be heard and to present his information, views, and concerns, and the COUNCIL willfully and intentionally dismissed DR. ZALOGA without an opportunity to address the COUNCIL or members of the public.

56. On May 16, 2007, DR. ZALOGA attended a COUNCIL hearing that was open to members of the public, in which DR. ZALOGA attempted to publicly protest the conduct of the COMMISSION and its officials.  Although the hearing was open to the public, COUNCIL members willfully and intentionally refused to give DR. ZALOGA an opportunity to be heard and to present his information, views, and concerns, and the COUNCIL willfully and intentionally dismissed DR. ZALOGA without an opportunity to address the COUNCIL or members of the public.

57. On May 17, 2007, DR. ZALOGA sent a letter to Patrick Dempsey of the Lackawanna County Planning Commission complaining of the actions of the COMMISSION and Jack Williams Tire.

58. On May 23, 2007, DR. ZALOGA attended a COUNCIL hearing that was open to members of the public, in which DR. ZALOGA attempted to publicly protest the conduct of the COMMISSION and its officials. Although the hearing was open to the public, COUNCIL members willfully and intentionally refused to give DR. ZALOGA an opportunity to be heard and to present his information, views, and concerns, and the COUNCIL willfully and intentionally dismissed DR. ZALOGA without an opportunity to address the COUNCIL or members of the public.

59. On May 23, 2007, DR. ZALOGA sent a letter to FAUVER informing him that DR. ZALOGA attended two public hearings held by the Lackawanna County Planning Commission. DR. ZALOGA informed FAUVER that he publicly protested the COMMISSION'S approval of the Jack Williams Tire Plan.

60. On June 4, 2007, DR. ZALOGA again sent a letter to Ms. Longo protesting the BOROUGH, the COMMISSION, and their officials for willfully and intentionally ignoring the facts and law in approving the Jack Williams Tire Plan. DR. ZALOGA also informed Ms. Longo that, despite his repeated attempts, DEFENDANTS have willfully and intentionally refused to respond to his repeated inquiries.

61. On June 27, 2007, DR. ZALOGA sent a letter to DURKIN raising several objections to the Jack Williams Tire Plan. Upon information and belief, DURKIN and the COMMISSION willfully and intentionally took no action as a result of DR. ZALOGA's letter and the objections contained within it.

62. On August 27, 2007, despite DEFENDANTS' repeated willful and intentional failure and refusal to engage in any due diligence and repeated willful and intentional failure and refusal to investigate Dr. ZALOGA'S repeated complaints, DURKIN issued Jack Williams Tire a permit

for construction.  Thereafter, DR. ZALOGA filed an objection to DURKIN'S issuance of the building permit to Jack Williams Tire.

63. On November 13, 2007, DR. ZALOGA attended a COMMISSION hearing that was open to members of the public to protest and object the issuance of a permit to Jack Williams Tire.  At the hearing, DR. ZALOGA presented evidence of multiple zoning ordinance violations committed by Jack Williams Tire, and DR. ZALOGA publicly requested that the COMMISSION and Jack Williams Tire to follow the law.

64. At the hearing, DR. ZALOGA also attempted to present information relevant to his objection, via expert testimony and reports from Joseph Guzek, regarding the various ordinance violations committed by Jack Williams Tire, but the COMMISSION members willfully and intentionally prevented DR. ZALOGA from being heard and presenting this information.

65. On November 14, 2007, the Scranton Times-Tribune published an article about the November 13, 2007 COMMISSION hearing, which quoted some of the public protests made by DR. ZALOGA at the hearing.  In the article, DR. ZALOGA stated that the COMMISSION'S decision was directly contrary to BOROUGH zoning ordinances.

66. On November 28, 2007, due to the complete willful and intentional inaction of all DEFENDANTS, PLAINTIFFS and Jack Williams Tire entered into a Settlement Agreement to potentially resolve some of the nuisance issues.  The Settlement Agreement included the construction of a noise barrier ("Berm") by Jack Williams Tire, which would be constructed, and act as a buffer, between PLAINTIFFS' property and Jack Williams Tire's property.

67. In January 2008, pursuant to the Settlement Agreement, Jack Williams Tire prepared to build the Berm.  However, Jack Williams Tire breached the Settlement Agreement by failing to

14

build the Berm to the specified height and quality as agreed to by the parties in the Settlement Agreement.

68. In April 2008, PLAINTIFFS filed a Petition in the Court of Common Pleas to enforce the terms of the Settlement Agreement reached with Jack Williams Tire.

69. In or around May 2008, the COUNCIL enacted and/or amended several zoning ordinances that were favorable to Jack Williams Tire. The newly enacted or modified zoning ordinances allowed: (1) the use of highway-oriented large scale commercial vehicles, or tractor trailers, by special exception; (2) the use of large scale commercial development by special exception; and (3) to reduce, by special exception, the number of parking spaces required by commercial entities. The COUNCIL enacted these ordinances to the specific benefit of Jack Williams Tire.

70. On May 14, 2008, the Scranton Times-Tribune published an article on the enactment of ordinances by the BOROUGH that "paves the way for large-scale commercial developments in manufacturing zones throughout the borough." The article cites protests made by DR. ZALOGA at a prior hearing, which raised concerns about the impact of these ordinances on local residents. Although DR. ZALOGA was the only resident to personally publicly protest during the hearing, DR. ZALOGA stated that his protests were being made on his own behalf and on behalf of many local residents, including many elderly residents that could not or were unable to attend the hearing in person.

71. On July 29, 2008, at a hearing before the Honorable Robert Mazzoni of the Court of Common Pleas, Jack Williams Tire agreed, as part of a Supplemental Settlement Agreement, to increase the Berm height by six feet (to 980 feet above sea level), and to "expeditiously" obtain an approval to modify the existing Plan from the BOROUGH and the COMMISSION. Judge

15

Mazzoni issued an Order directing PLAINTIFFS and Jack Williams Tire to comply with the terms of the Supplemental Settlement Agreement.

72. In August 2008, Jack Williams Tire sent a letter to the COMMISSION requesting an approval to modify the existing Addition Plan. Jack Williams Tire requested the following modifications to the Plan: (1) to eliminate a chain link fence; (2) to remove interior landscaping; (3) to install a new access driveway; and (4) to increase the height of the Berm by six feet. Although all requests were made specifically by Jack Williams Tire, requests (1), (2), and (3) were beneficial to Jack Williams Tire, and request (4) was beneficial to PLAINTIFFS.

73. On August 8, 2008, DR. ZALOGA attended a COMMISSION hearing that was open to members of the public, in which DR. ZALOGA requested a modification of the Jack Williams Plan. At the hearing, DR. ZALOGA publicly protested the process and conduct of the COMMISSION.

74. On August 18, 2008, Michael Pasonick, an engineering consultant retained by the COMMISSION, sent a letter to the COMMISSION recommending that the COMMISSION *approve* the proposed increase to the height of the Berm – one of the four requests that were specifically made to the COMMISSION by Jack Williams Tire, which request benefited PLAINTIFFS.

75. On August 27, 2008, the COMMISSION held a hearing, that was open to members of the public, to consider the modifications to the Plan proposed by Jack Williams Tire. The COMMISSION approved the following modifications: (1) to eliminate a chain link fence; (2) to remove interior landscaping; and (3) to install a new access driveway. All of the approved modifications were beneficial to Jack Williams Tire. However, the COMMISSION "tabled" the proposed Berm height modification until a later hearing, even though: (1) both PLAINTIFFS and

Jack Williams Tire supported the modification; (2) the COMMISSION'S own engineering consultant, Michael Pasonick, recommended approval of the Berm height increase; and (3) the COMMISSION approved the three other modifications that favored Jack Williams Tire. The proposed Berm height increase was the only modification that favored PLAINTIFFS.

76. The COMMISSION tabled the proposed Berm height modification purportedly on the grounds of aesthetic reasons, and concerns that the height increase could encroach upon existing swale and cause storm runoff.

77. On September 24, 2008, Michael Pasonick sent a revised letter to the COMMISSION stating that increasing the Berm height would not encroach on any swale or ditch, nor would it have any effect on storm runoff. Pasonick stated, however, that the additional six feet could create a "mountainous" effect and could be aesthetically offensive to neighbors.

78. On September 24, 2008, the COMMISSION held a hearing, that was open to members of the public, to consider the tabled Berm height modification. The COMMISSION denied the requested Berm height modification, even though: (1) both PLAINTIFFS and Jack Williams Tire supported the modification; (2) the COMMISSION'S own engineering consultant recommended approval of the Berm height modification; and (3) the COMMISSION approved the other three modifications on August 27, 2008, all of which favored Jack Williams Tire.

79. At the hearing, DR. ZALOGA publicly protested the process and conduct of the COMMISSION.

80. Also at the hearing, Christopher Powell, Esq., Moosic Borough Planning Commission Solicitor, protested the COMMISSION'S denial of the Berm height modification, specifically informing COMMISSION members that they willfully disregarded a court order and could be

held in contempt. Despite Attorney Powell's legal advice and even in the face of the possibility of being held in contempt of court, the COMMISSION denied the Berm height modification.

81. On September 25, 2008, the Scranton Times-Tribune published an article that discussed the September 24, 2008 COMMISSION public hearing.

82. On October 7, 2008, DENTE sent a letter to Jack Williams Tire stating that the COMMISSION purportedly denied the requested Berm height increase for the following reasons: (1) the six foot increase would have a "mountainous" effect and be aesthetically offensive to adjacent property owners; (2) the modification does not comply with Art. 5, § 501 D&E and § 527; and (3) the modification does not comply with Moosic Borough Zoning Ordinance § 1.130.

83. In December 2008, Judge Mazzoni held a conference with Segilia and MERCATILI about the COMMISSION'S denial of the Berm height modification, which was part of Judge Mazzoni's Order requiring compliance with the settlement terms. To better understand the COMMISSION'S denial, Judge Mazzoni recommended that the BOROUGH hold a meeting to obtain local residents' opinions.

84. On December 22, 2008, the COUNCIL held a hearing, that was ostensibly open to members of the public, purportedly in order to receive the input of local residents on the proposed Berm height modification, pursuant to Judge Mazzoni's request. However, in violation of the law, the COUNCIL intentionally provided PLAINTIFFS and other residents with only a few hours of notice of the public hearing.

85. Because there was a quorum of both COUNCIL and COMMISSION members at the December 22, 2008 hearing, the hearing constituted a "meeting" under the Pennsylvania Sunshine Law, 65 Pa. Cons. Stat. Ann. § 701, *et seq.*

86. By failing to publish notice of the hearing in advance in a newspaper of general circulation, and by failing to give notice to PLAINTIFFS and local residents at least 24 hours in advance, the COUNCIL violated the notice required under the Pennsylvania Sunshine Law.

87. At the hearing, MERCATILI stated that the COUNCIL'S decision to approve or deny the Berm height modification would be based on the feedback provided by neighbors. According to MERCATILI, "[w]hatever way the neighbors go, [the COUNCIL and mayor] will be happy with that."

88. At the hearing, MERCATILI admitted that, if proper notice would have been given, more local residents would have attended the public hearing. MERCATILI further admitted that more local residents would have attended if the meeting wasn't scheduled three days before Christmas.

89. As a result of the scheduling and lack of notice provided about the meeting, the COUNCIL intentionally suppressed the PLAINTIFFS and other local residents' ability to attend and be heard at the public hearing.

90. The COUNCIL, Segilia, and MERCATILI suppressed the PLAINTIFFS and other local residents' speech to prevent Judge Mazzoni from receiving the actual feedback from the local community members about Jack Williams Tire's Addition and the proposed Berm height modification, which was done in retaliation against PLAINTIFFS and with the intention to harm and interfere with the PLAINTIFFS' use and enjoyment of their property.

91. On March 17, 2009, DR. ZALOGA filed *pro se* objections to the nomination petitions of Segilia and MERCATILI in the Court of Common Pleas, on the grounds that both Segilia and MERCATILI were ineligible for public office under Pennsylvania law, because both Segilia and MERCATILI pled "*nolo contendere*" to various criminal charges on December 11, 1992.

92. Almost immediately thereafter, on April 9, 2009 to be exact, JEANNE ZALOGA observed, and became extremely frightened by, two unidentified men on PLAINTIFFS' property.  On a previous occasion, the two men previously had identified themselves as "surveyors."

93. As a result, DR. ZALOGA contacted the Lackawanna County Communication Center to have police officers dispatched to PLAINTIFFS' residence.  A responding officer ejected the two men from PLAINTIFFS' property.  The responding officer informed DR. ZALOGA that the men worked for "Design Consultants," and were requested to do some unidentified "work" on behalf of John "Jack" Brazil, BOROUGH Solicitor.

94. On April 27, 2009, DR. ZALOGA was contacted by a member of the Lackawanna County Prison Board ("Prison Board").  The Prison Board oversees the Lackawanna County Prison, with which DR. ZALOGA'S company, Correctional Care, is contracted to provide medical and health services.

95. The Prison Board member indicated to DR. ZALOGA that both Segilia and MERCATILI were upset with the PLAINTIFFS' persistent opposition to their decisions regarding the Jack Williams Tire facility, and that Segilia and MERCATILI wanted the Prison Board member to oppose Correctional Care's upcoming contract renewal.

96. In November 2009, DR. ZALOGA attended a campaign party for another Prison Board member seeking higher office.  At that event, this second Prison Board member informed DR. ZALOGA that Segilia and MERCATILI contacted him and demanded that he also vote against the renewal of Correctional Care's contract with Lackawanna County Prison, in exchange for their support for his political campaign.

97. Upon information and belief, DEFENDANTS attempted on numerous other occasions to harm and retaliate against PLAINTIFFS' and harm and interfere, as retaliation, with PLAINTIFFS' contractual rights by using their authority and political influence to interfere with the contract between Correctional Care and Lackawanna County.

### COUNT I: 42 U.S.C. § 1983 DEPRIVATION OF FREE SPEECH RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

98. Paragraphs 1 through 97 of the Complaint are incorporated herein by reference.

99. DEFENDANTS have violated PLAINTIFFS' constitutionally-protected rights to free speech by willfully and intentionally refusing to allow DR. ZALOGA to speak at COUNCIL hearings, held open to members of the public, on May 8, 2007, May 16, 2007, and May 23, 2007.

100. DEFENDANTS have violated PLAINTIFFS' constitutionally-protected rights to free speech by willfully and intentionally refusing to allow DR. ZALOGA to present information, via expert testimony and reports, in protest to various zoning violations committed by Jack Williams Tire, at a COMMISSION hearing, held open to members of the public, on November 13, 2007.

101. DEFENDANTS have violated PLAINTIFFS' constitutionally-protected rights to free speech by willfully and intentionally providing inadequate notice for a publicly held COUNCIL hearing, in which the purpose of the hearing was to obtain information necessary to decide a modification affecting the PLAINTIFFS' rights and, specifically, their use and enjoyment of their home and property. The DEFENDANTS' willful and intentional failure to provide notice suppressed and undermined PLAINTIFFS' free speech rights at a public hearing.

102. By willfully and intentionally providing inadequate or selective notice, DEFENDANTS sought to control the content and views expressed at the publicly held hearings.

21

103.     In each instance described in paragraphs 99 through 102, DEFENDANTS willfully and intentionally suppressed and limited PLAINTIFFS' constitutionally-protected speech because DEFENDANTS opposed the PLAINTIFFS' views, objections, information, criticism, and etc.

104.     In each instance described in paragraphs 99 through 102, DEFENDANTS willfully and intentionally suppressed and limited PLAINTIFFS' speech without providing them with an opportunity, or an adequate alternative, to address the BOROUGH, COUNCIL, COMMISSION, or members of the public.

105.     The DEFENDANTS, by willfully and intentionally suppressing PLAINTIFFS' free speech rights, interfered with and injured PLAINTIFFS' constitutional and property rights, caused a great diminution in value of PLAINTIFFS' property, and caused PLAINTIFFS to suffer a loss in income, severe mental anguish, emotional distress, and a loss of time and money in protecting their rights.

### COUNT II: 42 U.S.C. § 1983 RETALIATION UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

106.     Paragraphs 1 through 105 of the Complaint are incorporated herein by reference.

107.     At all relevant times herein, Segilia and MERCATILI, through their authority as BOROUGH officials, exercised influence and control on the other named DEFENDANTS.

108.     As part of PLAINTIFFS' repeated public protests and opposition to DEFENDANTS' constant willful and intentional refusal to investigate zoning violations and comply with the law, PLAINTIFFS engaged in the following constitutionally-protected free speech activities:

  a)  PLAINTIFFS sent numerous petitions, signed by a substantial number of PLAINTIFFS' neighbors, to DEFENDANTS to publicly protest Jack Williams Tire and the DEFENDANTS;

b) PLAINTIFFS attended numerous hearings held by the COUNCIL and COMMISSION and voiced opposition in protest to the actions and conduct of Jack Williams Tire and the DEFENDANTS;

c) PLAINTIFFS attended numerous hearings held by the Lackawanna County Planning Commission to voice opposition in protest to the actions and conduct of Jack Williams Tire and the DEFENDANTS;

d) PLAINTIFFS spoke or corresponded with reporters to voice their public opposition to the conduct of Jack Williams Tire and the DEFENDANTS;

e) Local newspaper publications either quoted or referenced the protests made by the PLAINTIFFS at hearings held open to members of the public;

f) DR. ZALOGA filed a *pro se* objection challenging the qualifications of Segilia and MERCATILI to hold democratically-elected public offices.

109. As a result of PLAINTIFFS' constitutionally-protected free speech activities, DEFENDANTS willfully and intentionally retaliated against PLAINTIFFS by permitting Jack Williams Tire to breach BOROUGH zoning ordinances, by frustrating PLAINTIFFS' ability to speak freely at publicly held hearings, by approving a series of requests submitted by Jack Williams Tire that harmed PLAINTIFFS property rights, and by refusing to approve a modification that favorably affected PLAINTIFFS' use and enjoyment of their property.

110. DEFENDANTS took these adverse actions in willful and intentional retaliation of PLAINTIFFS' free speech activities, and DEFENDANTS' proffered justifications for these actions are pretextual.

111. As a result of PLAINTIFFS' constitutionally-protected free speech activities, DEFENDANTS willfully and intentionally retaliated against PLAINTIFFS by sending two "surveyors" to PLAINTIFFS' home to intimidate, harass, and frighten PLAINTIFFS.

112. As a result of PLAINTIFFS' constitutionally-protected free speech activities, DEFENDANTS willfully and intentionally retaliated against PLAINTIFFS, through their authority as BOROUGH officials, by interfering with and/or attempting to interfere with

Correctional Care's contractual relationship with Lackawanna County, and by interfering with and/or attempting to interfere with and prevent the renewal of Correctional Care's contract with Lackawanna County.

113.     DEFENDANTS, by retaliating against PLAINTIFFS because of their exercise of constitutionally-protected free speech rights, willfully and intentionally interfered with and injured PLAINTIFFS' constitutional, property, and contractual rights, caused a great diminution in value of PLAINTIFFS' property, and caused PLAINTIFFS to suffer a loss in income, severe mental anguish, emotional distress, and a loss of time and money in protecting their rights.

**COUNT III: 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS VIOLATION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

114.     Paragraphs 1 through 113 of the Complaint are incorporated herein by reference.

115.     At all relevant times herein, Segilia and MERCATILI, through their authority as BOROUGH officials, exercised influence and control over the other named DEFENDANTS.

116.     DEFENDANTS repeatedly refused to investigate zoning ordinance violations committed by Jack Williams Tire as required by BOROUGH Zoning Ordinance § 9.510, despite numerous complaints and petitions by PLAINTIFFS.

117.     DEFENDANTS repeatedly suppressed and willfully and intentionally interfered with PLAINTIFFS ability to publicly protest Jack Williams Tire and the BOROUGH at COUNCIL and COMMISSION hearings, which were held open to members of the public.

118.     DEFENDANTS tabled and then denied a modification to the Jack Williams Tire Plan that favored PLAINTIFFS, even though all modifications favoring Jack Williams Tire were immediately approved.

119.     DEFENDANTS willfully and intentionally interfered with PLAINTIFFS ability to speak and present information at a public hearing about the Berm modification, a hearing

24

initiated at the request of Judge Mazzoni, by providing ineffective notice to PLAINTIFFS in violation of the Pennsylvania Sunshine Law.

120.     DEFENDANTS sent men to PLAINTIFFS home to intimidate, harass, threaten, and potentially harm PLAINTIFFS and their property rights.

121.     DEFENDANTS, through their authority as BOROUGH officials, willfully and intentionally interfered with Correctional Care's contractual relationship with Lackawanna County, and attempted to interfere and prevent the renewal of Correctional Care's contract with Lackawanna County.

122.     DEFENDANTS' decision-making and use of official authority with respect to PLAINTIFFS was motivated by self-interest, animosity towards PLAINTIFFS,  and a desire to harass, intimidate, threaten, and potentially harm PLAINTIFFS based upon their opposition to the Jack Williams Tire Addition and the BOROUGH.

123.     DEFENDANTS arbitrarily, willfully and intentionally disregarded the law on numerous occasions, with the intended purpose to interfere with and harm PLAINTIFFS' constitutional, property, and contractual rights.

124.     DEFENDANTS, by violating PLAINTIFFS' substantive due process rights, willfully and intentionally interfered and injured PLAINTIFFS' constitutional, property, and contractual rights, caused a great diminution in value of PLAINTIFFS' property, and caused PLAINTIFFS to suffer a loss in income, severe mental anguish, emotional distress, and a loss of time and money expended to protect their rights.

## COUNT IV: 42 U.S.C. § 1983 CONSPIRACY

125.  Paragraphs 1 through 124 of the Complaint are incorporated herein by reference.

126. At all relevant times herein, Segilia and MERCATILI, through their authority as BOROUGH officials, exercised influence and control over the other named DEFENDANTS.

127. Upon information and belief, DEFENDANTS conspired, by agreement, to deprive, interfere, suppress, harass, threaten, intimidate, and potentially harm PLAINTIFFS and their constitutionally-protected rights under the color of state authority.

128. The named DEFENDANTS, in their individual capacities, furthered, or failed to prevent, the conspiracy to deprive, interfere, suppress, harass, threaten, intimidate, and potentially harm PLAINTIFFS and their constitutionally-protected rights.

129. DEFENDANTS, through their conspiracy, took overt acts in a common purpose to interfere with and injure PLAINTIFFS' constitutional, property, and contractual rights, to cause a great diminution in value of PLAINTIFFS' property, and to cause PLAINTIFFS to suffer a loss in income, severe mental anguish, emotional distress, and a loss of time and money in protecting their rights.

## COUNT V: CIVIL CONSPIRACY

130. Paragraphs 1 through 129 of the Complaint are incorporated herein by reference.

131. At all relevant times herein, Segilia and MERCATILI, through their authority as BOROUGH officials, exercised influence and control over the other named DEFENDANTS.

132. Upon information and belief, DEFENDANTS conspired, by agreement, to deprive, interfere, suppress, harass, threaten, intimidate, and potentially harm PLAINTIFFS and their rights protected under the First and Fourteenth Amendments of the United States Constitution.

133. The named DEFENDANTS, in their individual capacities, furthered, or failed to prevent, the conspiracy to harm PLAINTIFFS' constitutionally-protected rights.

134.  DEFENDANTS, through their conspiracy, took overt acts in a common purpose to interfere with and injure PLAINTIFFS' constitutional, property and contractual rights, to cause a great diminution in value of PLAINTIFFS' property, and to cause PLAINTIFFS to suffer a loss in income, severe mental anguish, emotional distress, and a loss of time and money in protecting their rights.

## COUNT VI: ADVERSE POSSESSION/QUIET TITLE

135.  Paragraphs 1 through 134 of the Complaint are incorporated herein by reference.

136.  For a period of at least 21 years, PLAINTIFFS and their predecessors have adversely possessed a portion of Carey Lane.

137.  PLAINTIFFS and their predecessors' possession of said portion of Carey Lane has been actual, exclusive, visible, notorious, distinct, and hostile for a continuous period of 21 years, in which PLAINTIFFS manifestly intended to possess the land for themselves.

138.  Within the 21 year statutory period for adverse possession, the BOROUGH has not accepted dedication of Carey Lane.

139.  By failing to accept dedication of Carey Lane, and by failing to use or open Carey Lane to the public, the BOROUGH has failed to devote or dedicate Carey Lane for public use.

140.  Under the doctrine of adverse possession, PLAINTIFFS have acquired lawful title to the portion of Carey Lane adversely possessed.

141.  Alternatively, pursuant to 36 Pa. Cons. Stat. Ann. § 1961, the BOROUGH, by failing to dedicate, use, or open to the public for a period of 21 years, is precluded from opening Carey Lane without the consent of PLAINTIFFS.

## PRAYER FOR RELIEF

142.  Paragraphs 1 through 141 of the Complaint are incorporated herein by reference.

143.  WHEREFORE, PLAINTIFFS respectfully request the following relief from this

Honorable Court:

    a)  A declaratory judgment that:

        i.  the policies, practices, and actions, or failure to act, by DEFENDANTS is illegal and unconstitutional;

        ii.  to quiet title, and that PLAINTIFFS are the lawful owners of any portion of Carey Lane that PLAINTIFFS adversely possessed through the doctrine of adverse possession;

    b)  A permanent injunction enjoining DEFENDANTS from:

        i.  utilizing BOROUGH ordinances and zoning laws as means to harass, intimidate, threaten, and injure PLAINTIFFS' property rights;

        ii.  using their official authority and influence to interfere with the contractual relationship between Correctional Care and Lackawanna County;

    c)  Compensatory damages;

    d)  Punitive damages;

    e)  Reasonable attorneys' fees, costs, and interest;

    f)  Such other and further relief as this Court may deem just and proper.

**DUANE MORRIS LLP**


        /s/ Anthony L. Gallia
        Anthony L. Gallia – PA Bar ID: 86029


        30 South 17th Street
        Philadelphia, PA 19106-4196
        Tel: 215-979-1127
        Fax: 215-689-4919
        Email: algallia@duanemorris.com

        *Attorneys for Plaintiffs*

Dated: December 21, 2010