IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE ZALOGA; and | : | No. 3:10cv2604 |
| EDWARD ZALOGA, | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF MOOSIC; | : | |
| MOOSIC BOROUGH COUNCIL; | : | |
| MOOSIC PLANNING COMMISSION; | : | |
| MOOSIC BOROUGH ZONING BOARD | : | |
| OF ADJUSTMENTS; | : | |
| JOSEPH MERCATILI; | : | |
| JOSEPH DENTE; | : | |
| THOMAS HARRISON; | : | |
| BRYAN FAUVER; and | : | |
| JAMES DURKIN, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court is defendants' motion to dismiss. Having been fully briefed,

the matter is ripe for disposition.

**Background**

This complaint arises from a dispute about zoning decisions made by

defendants concerning property held by plaintiffs' neighbor. Plaintiffs are residents

of Moosic Borough in Lackawanna County, Pennsylvania. (Complaint (hereinafter

"Complt.") at ¶¶ 1-2). Plaintiff Edward Zaloga is the sole shareholder of a health and

medical company that provides contracted medical services to correctional facilities,

including the Lackawanna County Prison.[1]  (Id. ¶¶ 3-4).

Plaintiffs' home is located in a R-1 Residential District in Moosic,

Pennsylvania.  (Id. at ¶ 19).  Plaintiffs' property is adjacent to the Jack Williams Tire

& Auto Service Center ("Jack Williams Tire").  (Id. at ¶¶ 20-21).  Jack Williams Tire is

located in a manufacturing zoning district as established by the Moosic Borough

zoning ordinance.  (Id. at ¶ 20).  The facility serves as a distribution center, retail tire

shop and corporate offices for Jack Williams Tire.  (Id.).  Plaintiffs' property and Jack

Williams Tire are separated by a narrow strip of land.  (Id. at ¶ 22).  The developer's

original subdivision map, recorded in the Office of the Recorder of Deeds in

Lackawanna County on September 24, 1965, identifies this strip of land as Carey

Lane.  (Id.).  That strip of land is narrow and undeveloped, filled with natural grasses

and vegetation consistent with other undeveloped property in the area.  (Id. at ¶ 23).

Carey Lane has never been developed since being identified in 1965.  (Id.).

Plaintiff's have owned their home and property since 1994.  (Id. at ¶ 24).  In

1999, they constructed an addition to their home that encroached on part of Carey

Lane.  (Id. at ¶ 25).  Plaintiffs allege that they have "exclusively, visibly, notoriously,

distinctly and in a legally-hostile [sic] manner used the portion of Carey Lane that

runs along [their] property line with a manifest intent to possess the land for

themselves."  (Id.).  Indeed, defendant Joseph Dente, a member of the Moosic

---

[1]As will become apparent below, Plaintiff Edward Zaloga's association with
Correctional Care provides part of the basis for his claim of First Amendment retaliation.

Borough Planning Commission, reviewed and approved plaintiffs' plans for an addition that encroached on Carey Lane prior to that addition's construction.  (Id. at ¶ 26).  Plaintiff's allege that they and the previous owner of the property had adverse possession of portions of Carey Lane for more than twenty-one years.  (Id. at ¶ 27).

Plaintiffs' troubles with the Borough Planning Commission began in 2005. During the first part of that year, plaintiffs learned that Jack Williams Tire had begun to retread and recap tires at the facility next to their home.  (Id. at ¶ 29).  Plaintiffs also learned that Jack Williams tire intended to expand their facility and these operations.  (Id.).  This recapping and retreading work caused plaintiff's property to be covered in rubber particles, soot, smoke and noxious odors.  (Id. at ¶ 30).  The manufacturing activity also caused trucks to remain parked for hours near Jack Williams Tire.  (Id. at ¶ 31).  This activity also adversely affected plaintiffs' neighbors. (Id. at ¶ 30).

On August 5, 2005, Plaintiff Edward Zaloga sent a petition signed by eight of his neighbors to the then-mayor of Moosic Borough, John Segilia, Defendants Joseph Mercatili and Thomas Harrison, and other Borough Planning Commission members.  (Id. ¶ 32).  This petition protested the public nuisance and zoning violations allegedly committed by Jack Williams Tire.  (Id.).  Plaintiffs allege that under Moosic Borough's zoning ordinance, Defendant James Durkin, as Zoning Code and Enforcement Officer, was required to initiate an investigation upon receiving a complaint.  (Id. ¶ 33).  Plaintiffs contend that Durkin and the Borough

3

"knowingly, willfully and intentionally" violated the zoning ordinance by refusing to initiate an investigation after receiving plaintiffs' complaint. (Id.). Instead, they knowingly allowed the violations to continue. (Id.).

On August 23, 2005, Edward Zaloga sent another petition, signed by twenty-three neighbors, complaining of continuing zoning violations by Jack Williams Tire. (Id. at ¶ 34). This petition specifically requested an investigation from the Borough. (Id.). Still, the Borough continued willfully to refuse to investigate, allowing the zoning violations to continue. (Id.). Plaintiffs contend that these actions violated Borough zoning law. (Id.)

Edward Zaloga sent Durkin a letter on September 7, 2005 requesting an investigation into zoning violations at Jack Williams Tire. (Id. at ¶ 35). Durkin again refused to investigate, allowing the violations to continue. (Id.). Plaintiffs contend that these actions violated Borough zoning law. (Id.).

On October 3, 2005, the Pennsylvania Department of Environmental Protection issued a notice of violation to the company operating the manufacturing process at Jack Williams Tire. (Id. at ¶ 36). The notice verified that contaminants had been produced at the tire facility as a result of the manufacturing operations. (Id.).

That same month, Jack Williams Tire filed an application with Defendant Zoning Commission seeking approval of a proposed development plan. (Id. at ¶ 37). The plan proposed adding nearly 50,000 square feet to the existing 85,800-square-

4

foot facility.  (Id.).  This proposed addition exceeded the maximum permitted size increase under Borough zoning law.  (Id. at ¶ 38).  Jack Williams Tire sought to increase the size of its operations by more than 50%.  (Id.).  The Zoning Commission verbally denied this proposal on October 26, 2005.  (Id. at ¶ 39).  Plaintiff Edward Zaloga wrote the Commission on December 6, 2005, requesting that the Commission put this verbal denial in writing, as required by the Pennsylvania Municipalities Planning Code.  (Id. at ¶ 40).  The Commission refused to do so.  (Id.). Jack Williams Tire then obtained an order from the Court of Common Pleas reversing the Zoning Commission's verbal denial.  (Id.).  Plaintiffs contend that the Commission willfully committed a violation of Pennsylvania law in hopes of having a court reverse its decision.  (Id. at ¶ 41).

On January 16, 2006, Plaintiff Edward Zaloga sent a letter to the Defendant Commission complaining of public nuisance and zoning violations at Jack Williams Tire.  (Id. at ¶ 42).  The Commission again did nothing.  (Id.).  The Borough and Commission's alleged repeated failure to respond to plaintiffs' requests for investigation caused Zaloga to send the Commission a letter on June 5, 2006 requesting a hearing to address ongoing nuisance and violations at the Jack Williams Tire site.  (Id. at ¶ 43).  Over the next eleven months, from June 2006 to May 2007, Plaintiff Zaloga continued his efforts to get the Borough officials to recognize the problem with the property.  (Id. at ¶ 44).  He made "repeated verbal requests" to borough officials asking them to investigate various violations at Jack

Williams Tire.  (Id.).

Jack Williams Tire submitted a Land Development Plan to the Defendant

Zoning Commission in February 2007.  (Id. at ¶ 45).  Plaintiff alleges this plan

violated the Borough Zoning ordinance because the addition proposed by the plan

was too large.  (Id.).  Under this plan, trucks, tractor-trailers, and other industrial

vehicles would idle and dock for the purpose of unloading their cargo in an area

immediately adjacent to plaintiffs' property.  (Id. at ¶ 46).  Plaintiffs' swimming pool

and bedrooms are located in this area.  (Id.).  Plaintiff Edward Zaloga notified Jack

Williams Tire of his concerns about noise and other public nuisances created by the

proposed use when Jack Williams Tire submitted the plan.  (Id. at ¶ 47).

In March and April 2007, Plaintiff Edward Zaloga attended meetings of the

Defendant Lackawanna County Planning Commission.  (Id. at ¶¶ 48-50).  At those

meetings, Zaloga objected to various features of the plan, including Zaloga's claim

that the intended use was prohibited in the zoning district, that parking was

insufficient, and that the plan did not properly contain or identify improvements

adjacent to plaintiffs' property.  (Id. at ¶ 50).  Despite these objections, the Defendant

Commission conditionally approved the plan at its hearing on April 25, 2007.  (Id. at

¶ 51).

Plaintiff Edward Zaloga continued his protests of this decision.  He spoke with

a journalist about his complaints with the Commision and Borough's alleged failure

to consider properly the impact of the Jack Williams Tire plan on April 25, 2007.  (Id.

6

at ¶ 52).   On May 8, 2007, Edward Zaloga sent a petition to Defendant Mercatili that sixty-three of his neighbors had signed.  (Id. at ¶ 54).  The petition protested the Planning Commissions' supposed "willful and intention refusal to properly consider the law and facts" before approving the Jack Williams Tire plan.  (Id.).  The Borough and Commission did nothing to act on this petition.  (Id.).  Zaloga also attended a Borough Council meeting on May 8, 2007.  (Id. at ¶ 55).  At that meeting, he attempted a public protest of Commission officials' conduct.  (Id.).  The meeting was open to the public, but Council officials refused Zaloga an opportunity to speak. (Id.).  This same refusal to allow Zaloga to present his complaint occurred at Council meetings on May 16 and May 23, 2007.  (Id. at ¶¶ 56, 58).  Zaloga also sent Defendant Fauver a letter on May 23, 2007 to inform him that he "publicly protested" approval of the Jack Williams Tire plan.  (Id. at ¶ 59).  Plaintiff sent other letters in June 2007 reiterating his objections to the plan.  (Id. at ¶¶ 60-61).

Despite these repeated objections, Defendant Durkin issued a permit for construction to Jack Williams Tire on August 27, 2007.  (Id. at ¶ 62).  Plaintiff Edward Zaloga attended a Planning Commission meeting open to the public on November 13, 2007.  (Id. at ¶ 63).  There, he continued to raise objections to issuance of the permit, offering evidence of numerous zoning ordinance violations committed by Jack Williams Tire.  (Id.).  Zaloga also attempted to introduce expert testimony on the zoning violations, but the Commission refused to hear that testimony.  (Id. at ¶ 64).  The Scranton Times-Tribune covered this meeting, and on November 14, 2007

the newspaper published an article about it.  (Id. at ¶ 65).  The article quoted

Zaloga's comments at the hearing, including a statement that the zoning decision

was directly contrary to borough ordinances.  (Id. at ¶ 65).

Plaintiffs entered into a settlement agreement with Jack Williams Tire on

November 28, 2007.  (Id. at ¶ 66).  This agreement attempted to resolve issues

about noise and other nuisances.  (Id.).  The parties agreed that Jack Willliams Tire

would construct a noise barrier ("berm") to act as a buffer between the two

properties.  (Id.).  While Jack Williams Tire built the berm in January 2008, the

plaintiffs allege that the company breached the agreement by failing to build the

structure to the height and quality specified by the contract.  (Id. at ¶ 67).  Plaintiffs in

April 2008 filed a petition in the Court of Common Pleas of Lackawanna County to

enforce the settlement agreement.  (Id. at ¶ 68).  On July 29, 2008, at a hearing

before Judge Robert Mazzoni of the Court of Common Pleas, the parties agreed to a

supplemental settlement agreement.  (Id. at ¶ 71).  Jack Williams Tire agreed to

increase the height of the berm and obtain approval from the Borough and Planning

Commission to modify its existing plan.  (Id.).  Judge Mazzoni ordered the parties to

comply with this new agreement.  (Id.).

Jack Williams Tire then attempted to modify the addition plan approved by the

Zoning Commission in August 2008.  (Id. at ¶ 72).  The company sought four

modifications to the existing plan: (1) elimination of a chain link fence; (2) removal of

interior landscaping; (3) inclusion of a new access driveway; and (4) an increase in

height of the berm by six feet.  (Id.).  The first three requests benefitted Jack

Williams Tire.  (Id.).  The fourth request benefitted the plaintiffs.  (Id.).  Edward

Zaloga attended a Zoning Commission hearing on August 8, 2008 to request

modification of the Jack Williams plan.  (Id. at ¶ 73).  He also protested the

Commission's conduct and procedures.  (Id.).

   The Zoning Commission retained Michael Pasonick as an engineering

consultant, and he examined the proposed changes to the Jack Williams plan.  (Id.

at ¶ 74).  He sent the Commission a letter on August 18, 2008.  (Id.).  The letter

recommended that the Commission approve the proposed height increase for the

berm.  (Id.).  On August 27, 2008 the Commission held a hearing open to the public.

(Id. at ¶ 75).  At the hearing, the Commission approved the three modifications that

would benefit Jack Williams Tire but "tabled" the proposed modification to the berm

height.  (Id.).  This refusal to approve the berm immediately came despite agreement

between plaintiffs and Jack Williams Tire on that change and support from the

Borough's engineering consultant.  (Id.).  The Commission expressed aesthetic

concerns about the berm, as well as fears that the height increase could encroach

on existing swale and cause storm runoff.  (Id. at ¶ 76).  On September 24, 2008,

Pasonick sent the Commission a revised letter finding that the new berm height

would not encroach on a swale or ditch, and would not effect runoff.  (Id. at ¶ 77).

Pasonick found, however, that the height of the ditch could become "'mountainous'"

and offend neighbors' aesthetic sensibilities.  (Id.).

9

On September 24, 2008, the Commission convened a hearing open to members of the public to consider the berm height modification.  (Id. at ¶ 78).  The Commission denied this requested modification to the Jack Williams Tire plan, even though plaintiffs and Jack Williams Tire had supported the heightened berm and the Commission had already approved the other modifications to the plan.  (Id.).  The modifications the Commission approved all benefitted Jack Williams Tire.  (Id.).  Plaintiff Edward Zaloga attended this meeting and protested the Commissions' decision, as did Moosic Township Solicitor Christopher Powell, who warned the Commissioners that failing to approve the modification would violate a court order and subject them to contempt-of-court charges.  (Id. at ¶¶ 79-80).  The *Scranton Times-Tribune* published an article about this meeting on September 25, 2008.  (Id. at ¶ 82).

In December 2008, Judge Mazzoni held a conference with Zoning Commission members and suggested that the Borough hold a public meeting about the proposed berm height modification.  (Id. at ¶ 83).  On December 22, 2008, the Borough Council convened such a meeting.  (Id. at ¶ 84).  The supposed purpose of the meeting was to gain the input of local residents on the proposed modification of the berm, but the Council provided plaintiffs and other local residents with only a few hours notice of the hearing.  (Id. at ¶ 84).  Plaintiffs contend that this failure to provide notice of a meeting violated Pennsylvania law.  (Id. at ¶¶ 84-86).  Plaintiffs also allege that at this meeting, Defendant Mercatili stated that neighbor's feedback

10

would guide the Council's decision about whether to approve the zoning modification.  (Id. at ¶ 87).  Mercatili also admitted that more people would have attended the hearing if more notice had been given, and if the meeting were not scheduled three days before Christmas.  (Id. at ¶ 88).  Plaintiffs allege that this failure to provide proper notice "suppressed" residents' ability to attend and be heard at the public meeting.  (Id. at ¶ 89).  They also allege that the Council took these actions to retaliate against plaintiffs and to interfere with the use and enjoyment of their property.  (Id. at ¶ 90).

On March 17, 2009, Plaintiff Edward Zaloga filed *pro se* objections to the nomination petitions of Defendant Mercatili and Segilia in the Court of Common Pleas of Lackawanna County, Pennsylvania.  (Id. at ¶ 91).  He alleged that both Segilia and Mercatili were ineligible for public office because they had both pled *nolo contendre* to various criminal charges in December 1992.  (Id.).  On April 9, 2009, Plaintiff Jeanne Zaloga became frightened when she observed two unidentified men on plaintiffs' property.  (Id. at ¶ 92).  These two men had previously identified themselves as "'surveyors.'" (Id.).  Edward Zaloga called the police, and the responding officer ejected the two men from plaintiffs' property.  (Id. at ¶ 93).  The responding officer informed Zaloga that the men worked for "'Design Consultants'" which had been hired to do unidentified work on behalf of John Brazil, the Borough Solicitor.  (Id.).

On April 27, 2009, a member of the Lackawanna County Prison Board

contacted Edward Zaloga.  (Id. at ¶ 94).  The Prison Board oversees the

Lackawanna County Prison, where Zaloga's company has a contract to provide

medical and health services.  (Id.).  This board member told Zaloga that Segilia and

Defendant Mercatili were upset with plaintiffs' opposition to their decisions on the

Jack Williams Tire facility.  (Id. at ¶ 95).  The two men wanted the Prison Board

member to oppose renewing the contract Zaloga's company had with the prison.

(Id.).  Another prison board member informed Zaloga of similar statements Segilia

and Mercatili made to him.  (Id. at ¶ 96).  The two men agreed to support the Prison

Board member's political campaign if he voted against renewing the contract.  (Id.).

Plaintiffs allege that these attempts to interfere with Correctional Care's contract with

the prison continued on numerous other occasions.  (Id. at ¶ 97).

Plaintiff filed the instant six-count complaint on December 21, 2010.  Count I

alleges that defendants violated Plaintiff Edward Zaloga's free-speech rights by

refusing to allow him to speak at council meetings on May 8, May 16, and May 23,

2007 and by refusing to allow him to present evidence at a public meeting on

November 13, 2007.  Count II alleges that plaintiffs engaged in protected speech

during their frequent protests about zoning violations and Zoning Commission

policies, and that the defendants retaliated against plaintiffs for this speech by

allowing Jack Wilson Tire's zoning violations to continue, refusing to allow plaintiffs

to speak at public meetings, approving requests from Jack Williams Tire that violated

plaintiffs' property rights, and failing to approve modifications to the zoning plan.

Defendants also allegedly retaliated by sending men to trespass on plaintiff's

property and by opposing renewal of Correctional Care's contract with Lackawanna

County.  Count III alleges a violation of plaintiff's substantive due process rights

through defendants' interference with plaintiffs' property and free-speech rights.

Count IV alleges a conspiracy to violate plaintiffs' constitutional rights in violation of

42 U.S.C. § 1983.  Count V alleges a common-law conspiracy to violate plaintiffs'

rights.   Count VI is a claim for adverse possession of the Carey Lane property.

**Jurisdiction**

Because the case is brought pursuant to 42 U.S.C. § 1983, the court has

jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States.").  The court has supplemental jurisdiction over the plaintiff's state law

claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded

allegations of the complaint must be viewed as true and in the light most favorable to

the non-movant to determine whether "under any reasonable reading of the

pleadings, the plaintiff may be entitled to relief."  Colburn v. Upper Darby Township,

838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of

York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d

564, 565 (3d Cir. 1977) (per curium)).  The court may also consider "matters of

13

public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

**Discussion**

Defendants seek dismissal of the complaint on several grounds. The court will address each in turn.

**Statute of Limitations**

14

As a general matter, state law applies to §1983 claims when determining the appropriate statute of limitations "if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 265 (1985).  Pennsylvania law requires that the plaintiff commence his action within two years of his injury.  See 42 PA. CONS. STAT. .ANN. §5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct").  Moreover, Pennsylvania courts have ruled that the statute of limitations begins to run in cases where an injury is ongoing "when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's misconduct." Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984).

### i. Count I

Defendants argue that Count I of the complaint must be dismissed with prejudice because plaintiffs do not allege any conduct occurred within the applicable statute of limitations.  Plaintiffs filed their complaint on December 21, 2010, and all the conduct alleged in this count occurred in 2007, more than two years before the complaint appeared.  Plaintiffs respond that Count I is based on conduct that occurred after December 21, 2008, since plaintiffs have alleged that the defendants were involved in a continual campaign to harass them and that this campaign continued well into 2009.

15

Plaintiffs argue that the continuing violations doctrine should allow their complaint to proceed.  The continuing violations doctrine provides "an 'equitable exception to the timely filing requirement.'" Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  By the terms of the doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'" Id. (quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).[2]  To fit within the doctrine, a defendant's actions must be "'more than the occurrence of isolated or sporadic acts.'" Id. (quoting West, 45 F.3d at 755)).  Courts utilize three factors to determine whether the acts complained of qualify: "(1) subject matter–whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency–whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence–whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and

---

[2]The Third Circuit Court of Appeals has explained the context in which the continuing violations doctrine most clearly operates as an equitable device: "there is a 'natural affinity' between the theory underlying hostile environment claims and the continuing violation theory . . . A sexually hostile work environment often 'results from acts of sexual harassment . . . which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment.'" Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995)).

whether the consequences of the act would continue even in the absence of continuing intent to discriminate."[3]  Id.  Once a plaintiff establishes that the doctrine applies and that one violation occurred within the period established by the statute of limitations, a plaintiff may then "offer evidence of, and recover for, the entire continuing violation."  West, 45 F.3d at 755.

Plaintiffs allege that all of defendants' conduct was part of a larger scheme to violate their rights, and that defendants' continued their scheme to violate their rights through a series of acts after December 21, 2008.  They point to a number of events to advance this argument: failure to provide notice about a December 22, 2008 public meeting regarding plaintiffs' property; the two trespassers ejected from plaintiffs' property in April 2009; attempts to interfere with plaintiffs' contract with Lackawanna County in 2009.  Plaintiffs contend that these events after December 21, 2008 were part of a continuing practice of violating plaintiffs' constitutional rights and are thus saved by the continuing violations doctrine.  In any case, dismissal at this point would be premature, since discovery would reveal facts which would make the continuing violations doctrine apply.

The court will grant the defendants' motion on this count.  Plaintiffs' allegation here is that defendants violated Plaintiff Edward Zaloga's free speech rights on four

---

[3]The third of these factors requires a court to "consider the policy rationale behind the statute of limitations.  That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  Cowell 263 F.3d at 295.

occasions in 2007 by refusing to allow him to speak or otherwise participate in public

meetings regarding zoning decisions on the Jack Williams Tire facility.  All claims

related to these free speech concerns accrued when the council refused to allow

Zaloga to speak, as he was aware of his injury (inability to exercise his free speech

rights) and the source of that injury (the Board's refusal to allow him to speak or

present evidence).  Plaintiffs' free speech claims here were discrete, related to

particular, concrete incidents, and they could have filed suit at the time the events

took place.  Courts have found that the continuing violations "theory does not apply

when plaintiffs are aware of the injury at the time it occurred."  Morganroth &

Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir.

2003).  Such is the case here.

    This case is like Cowell v. Palmer Township.  In Cowell, a developer sued a

township, alleging that two municipal liens imposed on property that was part of a

development amounted to a taking that violated the Fifth Amendment and the

Substantive Due Process Clause of the Fourteenth Amendment.  Cowell, 263 F.3d

at 289.  The township imposed the liens in 1992 and 1993, but the plaintiffs did not

file their complaint until 1999.  Id. at 288-89.  The district court ruled that plaintiffs'

due process claim was barred by the two-year statute of limitations.  Id. at 291.  On

appeal, plaintiffs contended that the continuing violations doctrine saved their claim,

because "defendants engaged in a 'continuing campaign of affirmative acts' that

interfered with their substantive due process rights."  Id. at 292.  Plaintiffs alleged

18

"that the Township engaged in a campaign of harassment against them that extended beyond the imposition of the two municipal liens." Id. at 294.  They pointed to five acts over a two year period they alleged represented evidence of this harassment.  Included in these acts were the township's breach of the terms of an agreement designed to eliminate one of the liens; a zoning decision that lowered the value of one of the lots in the development plaintiffs owned; another planning decision that compelled plaintiffs to reduce the sale price for another lot; a township-imposed requirement for installation of stop lights on one of the lots in the development; a five-year-old bill sent by the Township to the plaintiffs for the inspection of a building. Id.  Plaintiffs also complained of a recent state-court filing where the Township sought to have plaintiffs make further improvements to their property.  Id.

The court applied the three-part standard described above, finding first that the acts cited by plaintiffs were "isolated, intermittent acts," and not part of an ongoing pattern. Id.[4]  The court found that the subject matter of the alleged violations was not related to the liens, which formed the basis of the plaintiffs' allegations. Id.  The plaintiffs had "attempt[ed] to link these acts by characterizing them as general interference with property rights." Id.  The court rejected this claim, finding that "our substantive due process jurisprudence has always focused on the

---

[4]The court also rejected plaintiffs contention that the liens themselves amounted to a continuing violation as long as they were in place, noting that "[t]he focus of the continuing violations doctrine is on the affirmative acts of the defendants." Cowell, 263 F.3d at 293.

particular acts of the defendant, and not a general interference with property rights."
Id.  Since, as plaintiffs admitted at oral argument, each of defendants' acts was "an
independent violation of [plaintiffs'] substantive due process rights," plaintiffs should
have brought  "a new § 1983 claim with respect to these alleged harassments
instead of trying to tack them on to their existing claim." Id. at 294-95.  The case
here is similar; the defendants' refusals to allow Edward Zaloga to speak or present
evidence at hearings were each an independent violation of Zaloga's First
Amendment rights, and he could have brought claims after each violation.

The court next addressed whether the acts alleged by the plaintiffs occurred
with a sufficient frequency to make the them part of a recurring pattern or simply
isolated incidents.  Plaintiffs had argued that defendants had been engaged in a
campaign of harassment that began as early as 1987 and continued into the late
1990s. Id. at 295.  The court pointed out that "[m]any of the alleged harassing acts
deal with routine dealings between a land developer and a board of supervisors" that
could not be considered substantive due process violations. Id.  In any case, claims
related to those acts would be different violations from those related to the liens and
alleged in the complaint; to satisfy the "frequency" requirement, the acts "must at
least be acts of substantially similar nature to those which were the basis of the
original claim." Id.  While the acts allegedly violating plaintiffs' constitutional rights
were not as separate from the initial incidents as in Cowell, they nevertheless were
separate and discrete acts from which individual claims could flow.  Plaintiffs sat on

20

these rights, and cannot use the continuing violations doctrine to revive claims on which the statute of limitations has run.  <u>See, e.g.</u>, <u>Harris v. Township of O'Hara</u>, 282 Fed. Appx. 172, 175 (3d Cir. 2008) (finding no continuing violation in Township's alleged discriminatory enforcement of zoning ordinance in 2006 against plaintiffs because township zoning board had made an identical decision in 2003 because the first decision "triggered [plaintiffs'] duty to assert any constitutional violations," and to find a continuing violation would allow plaintiffs "to revive stale claims under the guise of a tenuous continuing violations theory.")

Finally, the court in <u>Cowell</u> concluded that the acts about which plaintiffs complained "had a 'degree of permanence' which should trigger the plaintiff's awareness of and duty to assert his/her rights."  <u>Cowell</u>, 263 F.3d at 295.  The court concluded that "the plaintiffs were aware of the wrongfulness of the liens when the liens were imposed in 1992 and 1993.  Therefore, the plaintiffs should have brought a claim to strike the liens in state court and filed a § 1983 claim within the applicable limitations periods."  <u>Id.</u>  Allowing plaintiffs to bring a claim based on the imposition of the liens "would be unfair to the Township and contrary to the policy rationale of the statute of limitations."  <u>Id.</u>  As such, the court concluded that the equities balanced in favor of the defendants and refused to apply the continuing violations doctrine.  <u>Id.</u>  The same situation applies here: each refusal to allow plaintiffs to participate in meetings was an independent and complete act; plaintiffs needed no additional information to become aware of the injury they suffered.  The wrongs they

21

allegedly faced were permanent and connected to an individual act.  The continuing violations doctrine, if applied here, would allow plaintiff's to revive stale claims simply because they bear a resemblance to current controversies.

The three factors thus weigh against applying the continuing violations doctrine to this case, and the court will grant the motion on this claim.  The allegations of constitutional violations contained in this count all occurred more than two years before plaintiffs filed the complaint and the statute of limitations is not tolled by the continuing violations doctrine.

### ii.  Count II

Defendants also contend that Count II of the complaint should be dismissed, largely on statute-of-limitations grounds.  They argue that nearly all of the retaliation alleged by the plaintiffs occurred more than two years before plaintiffs filed their complaint, and is therefore barred.  Only two allegations of retaliation fall within the statute of limitations.  The first, the sending of "surveyors" to plaintiffs' property, does not involve any action by the defendants and is thus not actionable under Section 1983.  The second, agitation that Correctional Care's contract with Lackawanna County not be renewed, is not the sort of activity that amounts to retaliation.

As retaliatory activity, the plaintiffs point to a series of actions: defendants allowed Jack Williams Tire to breach borough zoning ordinances; "frustat[ed] plaintiffs' ability to speak freely at publicly held hearings"; "approv[ed]" zoning requests made by Jack Williams tire that damaged their property rights; and refused

22

a zoning modification that would have benefitted plaintiffs.  (Complt. at ¶ 109).  In

addition, plaintiffs contend that defendants sent two "surveyors" to plaintiffs' home to

harass, intimidate and frighten them.  (Id. at ¶ 111).  Finally, defendants contend that

defendants retaliated against them by attempting to interfere with Correctional

Care's contractual relationship with Lackawanna County.  (Id. at ¶ 112).

Defendants contend that all of the retaliatory conduct described by the

plaintiffs occurred more than two years ago, and any claims based on that old

conduct is barred.  The court agrees that plaintiffs could not state a claim based on

any alleged retaliatory conduct that occurred before December 21, 2008, two years

before plaintiffs filed their complaint.  Such retaliation would have been a an isolated

and discrete incident that would have put plaintiff on notice of the claim, whatever

other acts of retaliation followed.   For the reasons described above, retaliation that

occurred more than two years ago cannot serve as a basis of the claim.  The claim

contends, however, that defendants' refusal to enforce the zoning ordinance and

refusal to allow plaintiffs to voice a complaint continues, and continues to injure

plaintiffs.  To the extent that plaintiffs could prove the existence of such retaliatory

action during the relevant time period, they have stated a claim.

In any case, defendants concede that two alleged incidents of retaliation

occurred during the relevant time period, and argue for dismissal of the claim based

on the substantive law of retaliation.  A plaintiff seeking to recover on a First

Amendment retaliation claim "must allege: (1) constitutionally protected conduct, (2)

23

retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory actions." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Plaintiffs allege that they spoke at public meetings over a period of years to dispute the zoning decisions made by the officials in the Defendant Borough. Defendants do not appear to dispute that such conduct amounts to constitutionally protected conduct. Defendants instead dispute whether the defendants' alleged conduct in sending "surveyors" to plaintiffs' property and attempting to prevent renewal of the Correctional Care contract amount to conduct sufficient to state a claim for retaliation.

The Third Circuit has declared in the context of workplace retaliation that "the key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). The sort of conduct that would count as retaliatory "'need not be great in order to be actionable,' but it must be more than *de minimis*." Id. (quoting Suppan, 203 F.3d at 235). Here, the plaintiffs allege that defendants[5] sent two men to

---

[5]Defendants also argue that the claim should be dismissed here because plaintiffs have not alleged that any of the defendants actually sent the phone surveyors onto plaintiffs' property. Defendants point out that plaintiffs allege that they were informed that the two men had been hired by John Brazil, the borough solicitor. Since Brazil is not a defendant, defendants argue, plaintiffs have not alleged that defendant acted "under color

24

plaintiffs' property to harass and intimidate them because they spoke against Zoning

Board decisions.  Harassment and intimidation by unknown trespassers on one's

property would cause a reasonable person to re-think engaging in free-speech in the

future, and is enough to state a claim for First Amendment Retaliation.  Similarly,

attempts by Borough officials–even if unsuccessful[6]–to prevent the successful

operation of plaintiffs' business, would cause a person of ordinary firmness to

reconsider speech in the future.  As such, plaintiffs have stated a First Amendment

retaliation claim and the court will deny the motion on this point.

### iii.  Count III

Defendants argue that Count III of plaintiffs' complaint, which alleges

violations of their substantive due process rights, should be dismissed.  They argue

both that the claims are time barred, and that even if not time-barred, none of the

―――――――――――――

of state law," as required by Section 1983.  The court does not read the plaintiffs'
allegations that way.  The claim alleges that "DEFENDANTS willfully and intentionally
retaliated against PLAINTIFFS by sending two "surveyors" to PLAINTIFFS' home to
intimidate, harass, and frighten PLAINTIFFS."  (Complt. at ¶ 111).  Giving the complaint the
generous reading required at this stage in the proceedings, the court finds that the plaintiffs
have alleged that the defendants retaliated against them by sending the "surveyors" to the
their property.  The court reads the allegation to be that defendants directed this harassing
activity to occur, even if the direct order came from Brazil.  Defendants may of course
renew their argument at the summary judgment stage if evidence demonstrates that none
of the named defendants were involved in ordering this action and that there was no official
policy or custom subjecting the municipality to liability.

[6]The court rejects defendants' argument that the continuation of the Correctional
Care contract with Lackawanna County means that the plaintiffs make out a claim for
retaliation based on defendants' alleged attempt to have that contract rescinded.  The
question in this context is how an ordinary person would respond to defendants' conduct,
not whether defendants succeeded in their alleged retaliatory efforts.

defendants' alleged conduct is so outrageous as to "shock the conscience" and implicate substantive due process.

"When complaining of a violation of substantive due process rights, a plaintiff must prove that the governmental authority acted to 'infringe a property interest encompassed by the Fourteenth Amendment.'" Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir. 1994) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991)).  Once this property interest is established, the court must then decide whether the actions of a state official inappropriately infringed this interest. Courts have determined that substantive due process rights are violated by state actors only when those actors' behavior "shocks the conscience."  The United States Supreme Court has defined such behavior as "conduct intended to injure in some way unjustifiable by any government interest."  County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).  Conscience-shocking behavior consists of "only the most egregious and arbitrary official conduct."  Assocs. in Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003).  Behavior that shocks the conscience depends on the facts of the case, and the court's "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of the circumstances before any abuse of power is condemned as conscience-shocking."  Id.; See also United Artists Theatre Circuit v. Twp. of Warrington, 316 F.3d 39s, 399-400 (3d Cir. 2003) (holding that "executive action violates substantive due process only when it shocks the conscience but that the

26

meaning of this standard varies depending on the factual context.").

Zoning decisions can fall under this standard when government action to restrict use is "arbitrary and irrational." Neiderhiser v. Borough of Berwick, 840 F. 3d 213, 218 (3d Cir. 1988) (finding that a denial of a permit for building a store was "arbitrary and irrational" because the only reason for denial was the fact that the video store offered pornographic films); see also Indep. Enters. Inc. v. Pittsburgh Water and Sewer Auth., 103 F. 3d 1165, 1180 (3d Cir. 1997) (holding that a substantive due process claim applies only when a constitutionally protected interest like landownership is involved, even if the decision appears "arbitrary and irrational."). When substantive due process standards are applied to zoning decisions, a plaintiff must allege more than "the kind of disagreement that is frequent in planning disputes." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004). This standard should be a high one, since a substantive due process claim should not "[convert] federal courts into super zoning tribunals." Id. at 285. To implicate due process, such a claim must contain "allegations of corruption or self-dealing" or evidence that officials tried "to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or" had "some bias against an ethnic group," or performed a "virtual 'taking.'" Id. at 286; see also Maple Props., Inc. v. Twp. of Upper Providence, 151 Fed. Appx. 174, 179 (3d Cir. 2005) (finding that zoning decisions violate due process when they involve "corruption, self-dealing, or a concomitant infringement on other fundamental

27

individual liberties, resulting in harms that cannot be adequately rectified by pre- or post-deprivation proceedings.").

Plaintiffs argue that they have alleged corruption or self-dealing from borough officials.  The complaint, they point out, alleges that "'[d]efendants' decision making and use of official authority with respect to Plaintiffs was motivated by self-interest, animosity toward Plaintiffs, and a desire to harass, intimidate, threaten, and potentially harm Plaintiffs based upon their opposition to the Jack Williams Tire Addition and the Borough.'"  (Plaintiffs' Brief in Opposition (Doc. 13) at 17 n.5) (quoting Complt. at ¶ 122).  Such allegations, they insist, are enough to state a substantive due process claim based on self-dealing.  Moreover, they contend that a substantive due process violation occurs whenever a defendant willfully disregards the law and harms a plaintiff's property rights, and that they have alleged such actions in the complaint.

In support of this count of the complaint, plaintiffs allege that defendants "repeatedly refused to investigate zoning ordinance violations committed by Jack Williams Tire . . . despite numerous complaints and petitions by plaintiffs." (Complt. at ¶ 116).  Plaintiffs likewise allege that defendants refused to allow them to lodge protests regarding zoning decisions at public meetings.  (Id. at ¶ 117).  They also contend that defendants refused to modify zoning plans that favored plaintiffs, but acted on modifications favoring Jack Williams Tire.  (Id. at ¶ 118).  Finally, plaintiffs contend that defendants sent men to plaintiffs property to harass them and interfered

28

with Correctional Care's contract with Lackawanna County.  (Id. at ¶¶ 119-120).

The court will grant the motion to dismiss on this point as it relates to the defendants' zoning decisions.  First, most of the conduct plaintiffs claim violated their substantive due process rights occurred more than two years before the plaintiffs filed their complaint.  As explained above, almost all of the meetings and the zoning decisions about which plaintiffs complain took place before December 21, 2008.  For the reasons stated in reference to Count I, the court concludes that any claims plaintiffs had about the way the borough allegedly conducted those meetings were ripe at the conclusion of the meetings and constituted separate, discrete violations of plaintiffs' rights.  The continuing violations doctrine does not apply, and plaintiffs are barred from bringing claims based on that conduct.

In any case, to the extent that plaintiffs' claims concerning the zoning decisions made by the defendants are not barred by the statute of limitations, they fail to state a substantive due process claim.  As described above, plaintiffs complain about the zoning decisions defendants made, and such complaints represent "the kind of disagreement that is frequent in planning disputes."  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).  To find that the conduct alleged by the defendants–failing to approve plans plaintiffs insist met zoning guidelines, making erroneous decisions about the consequences of a plan, improperly enforcing zoning laws already on the books–would transform a "federal [court] into [a] super zoning [tribunal]."  Id. at 285.  This decision applies even to those portions of the claim the

court has concluded are time-barred.

Some portions of this claim are not time barred, however, and the court must examine them.  One part of this claim addresses defendants' actions at a public meeting that occurred on December 22, 2008.  Plaintiffs complain about the manner in which defendants conducted the meeting and the amount of notice they provided before holding it.  Seen as a dispute about zoning decisions, the court finds that plaintiffs' complaints do not cite behavior that shocks the conscience, but simply reflect disagreements about how meetings should be run.   Even if the court evaluates plaintiffs' claim as a general substantive due process claim and not a claim related specifically to a zoning decision, such alleged behavior is not "conduct intended to injure in some way unjustifiable by any government interest."  County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).  Conscience-shocking behavior consists of "the most egregious and arbitrary official conduct," and failing to provide sufficient notice does not qualify as such. Assocs. in Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003).  Here, plaintiffs' complaint is that defendants did not provide the proper notice for a meeting convened to consider residents' views on revised zoning plans, and that failure to provide this proper notice violated state law.  Such allegations do not state a substantive due process claim.  Courts have found that violations of state law, even those done in bad faith, do not in themselves create a Fourteenth-Amendment claim. See, e.g., UA Theatre Circuit, 316 F.3d at 402 (even a "bad faith" violation of state

30

law does not make an action "conscience shocking"); <u>Highway Materials, Inc. v.</u>

<u>Whitemarsh Twp.</u>, 386 Fed. Appx. 251, 257 (3d Cir. 2010) (finding that "the most

that can be proven is a bad-faith violation of state law, which does not meet the

[conscience-shocking] standard."); <u>Lindquist v. Buckingham Twp.</u>, 106 Fed. Appx.

768 (3d Cir. 2004) ("without more, a violation of state law, even a bad faith violation

of state law, will not support a substantive due process claim in a land-use dispute).

Plaintiffs cite to two other incidents in stating their claim for substantive due

process, however, and the court concludes that both these incidents occurred within

the statutory limitations period.  Neither of these incidents involve a zoning decision,

however, and the first question before the court is whether either of these incidents

implicates a property interest protected by the due process clause of the Fourteenth

Amendment.  As explained above, plaintiffs allege that defendants sent anonymous

men to their property to harass and intimidate them during the dispute over zoning

use.  They also allege that defendants interfered with Correctional Care's contractual

relationship with Lackawanna County.  The court concludes that plaintiffs have

alleged that defendants interfered with their use and enjoyment of their property

without any rational justification, but merely to harass and harm plaintiffs in an

arbitrary and irrational manner, and thus have claimed that defendants interfered

with a protected property interest and violated their substantive due process rights.

See <u>DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell</u>, 53 F.3d 592,

601 (3d Cir. 1995) (finding that "in situations where the governmental decision in

question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim when he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.").

In terms of the other incident not time-barred, however, the court finds that plaintiffs have not claimed that defendants infringed a protected property interest. The property interest here in question is the Correctional Care contract with Lackawanna County.  The plaintiffs claim that defendants interfered with this contract, attempting to have the contract cancelled, in a malicious effort to harm the plaintiffs.  Clearly, "[t]o prevail on a non-legislative substantive due process claim, "'a plaintiff must establish as a threshold matter that he has a protected property interst to which the Fourteenth Amendment's due process protection applies.'" Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-140 (3d Cir. 2000) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000)).  While a plaintiff bringing a procedural due process claim may establish a protected property interest with respect to state law, "'not all property interest worthy of procedural due process protection are protected by the concept of substantive due process.'" Id. at 140 (quoting Reich v. Beharry, 883 F.2d 239, 243 (3d Cir. 1989)).  To establish a substantive due process violation, "'a plaintiff must have been deprived of a particular quality of property interest.'"  Id. (quoting DeBlasio, 53 F.3d at 598). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is

'fundamental' under the United States Constitution.  <u>Nicholas</u>, 227 F.3d at 140.

In <u>Nicholas</u>, the plaintiff, a tenured professor terminated by the defendant university, claimed his contract created a property interest protected by substantive due process.  The court disagreed, finding that plaintiff's "tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution."  <u>Id.</u> at 143.  The situation here is analogous: plaintiffs claim that defendants interfered with a state-created contractual interest.  As such, plaintiffs have not alleged interference with a fundamental interest and have not stated a substantive due process claim.  <u>See also</u>, <u>Reich v. Beharry</u>, 883 F.2d 239 (3d Cir. 1989) (finding that plaintiff, a lawyer contracted to perform services for a county which then refused to pay him, had not alleged deprivation of an interest protected by substantive due process) <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (finding that "public employment is not a fundamental right entitled to substantive due process protection.").  The court will therefore grant the motion on this point.  Plaintiffs' only remaining substantive due process claim will be the claim related to defendants' interference with their use and enjoyment of the property here in question.

### iv.  Counts IV and V

Defendants also seek dismissal of plaintiffs' conspiracy claims in counts IV and V.  They argue that plaintiffs have not alleged any overt acts in furtherance of

33

the alleged conspiracies that occurred after December 21, 2008, and thus contend

that such claims are time-barred.  In addition, plaintiffs do not allege a conspiracy to

interfere with the Correctional Care contract, but instead lay blame for that

interference on one defendant, Defendant Mercatili.  Plaintiffs respond that they

have alleged conspiracy from the defendants to deprive them of their rights under

both state and federal law.

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or

more conspirators reached an agreement to deprive him or her of a constitutional

right 'under color of law.'"  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685,

700 (3d Cir. 19993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150

(1970)).  The court has concluded that plaintiffs have stated claims for First

Amendment Retaliation and substantive due process violations based on

defendants' actions in sending men to plaintiffs' property to harass and intimidate

them.  The court has also determined that plaintiffs have stated a claim for a

substantive due process violation by alleging the first of these transgressions.  Read

in the light most favorable to the plaintiffs, the court finds that plaintiffs have alleged

that all defendants were involved in efforts to harass and intimidate plaintiffs through

these actions.  Plaintiffs describe in detail, as explained above, the means

defendants used to deprive them of their rights.  They further allege that defendants

"conspired, by agreement, to deprive, interfere, suppress, harass, threaten,

intimidate, and potentially harm" plaintiffs.  (Complt. at ¶ 127).  As such, they have

alleged that two or more conspirators reached an agreement to deprive plaintiffs of their constitutional rights, and the court will deny the motion on these grounds.

In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."  Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  Thus, "'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'"  Id. (qouting McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000)).  For the reasons described in the reference to plaintiffs' federal conspiracy claim, the court likewise finds that plaintiffs have stated a claim for civil conspiracy by alleging that defendants acted with a common purpose to deprive plaintiffs of their constitutional rights.

**v. Count VI.**

Defendants argue that plaintiffs' adverse possession claim in Count VI of the complaint should be dismissed.  They contend that plaintiffs cannot prove the actual, continuous, exclusive, visible, notorious, distinct and hostile possession for twenty-one years required to exercise adverse possession under Pennsylvania law.  The property in question is the portion of Carey Lane described above, and defendants argue that the complaint alleges only that plaintiffs have occupied this property since 1999, an insufficient period of time to gain adverse possession.  Plaintiffs respond

that they have claimed adverse possession in their complaint, and have also sought to quiet title pursuant to 36 PA. CONS. STAT. ANN § 1961.

In Pennsylvania, "[a]dverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law." Recreation Land Corp. v. Hartzfield, 947 A.2d 771, 774 (Pa. Super. Ct. 2008) (quoting Flannery v. Stump, 786 A.2d 255, 258 (Pa. Super. Ct. 2001)). One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.'" Id. Defendants point out, and plaintiffs acknowledge, that plaintiffs have possessed the property in question since 1994, less than the twenty-one years required to obtain adverse possession. Plaintiffs insist, however, that the previous owner of the land had adversely possessed the strip of land in question and conveyed this possession to the them. (See Complt. at ¶ 28).

Under Pennsylvania law, "under certain circumstances, the periods of possession of prior owners may be added on to the period of possession of the present owners." Baylor v. Soska, 658 a.2d 743, 744-45 (Pa. 1995). A party may therefore convey an inchoate claim for adverse possession in a deed, but Pennsylvania courts have determined that "the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty

36

that which is intended to be conveyed." Id. at 746.

The court will deny the defendants' motion on this point.  While plaintiffs' complaint is somewhat contradictory and unclear in describing exactly what activities of the previous owners constituted adverse possession and how they continued them, the court concludes that plaintiffs, as described above, have alleged that they and the previous owners combined for an actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the Cherry Lane land for twenty-one years.  The plaintiffs also allege that when they received title to their home "the conveyance included the prior owners' adverse possession of said portion of Cherry Lane that runs along" their property line.  (Complt. at ¶ 28).  If plaintiffs can prove these facts, they would be entitled to prevail on their adverse possession claim under Pennsylvania law.

Defendants also appear to contend that plaintiffs have not made out a case on their quiet title claim.  Pennsylvania law provides that "[a]ny street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such persons or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which same has been, or shall be, laid out."  36 P.S. § 1961.  Thus, "[t]he public's right to a portion of a subdivision reserved for a street is effectively foreclosed where the municipality does not use or open the street within

twenty-one years after its dedication to the public." <u>Leininger v. Trapizona</u>, 645 A.2d 437, 440 (Pa. Cmmw. Ct. 1994).  "Where a municipality does not open the street within the twenty-one year period set forth in Section 1961, the abutting lot owners acquire the fee in the street to the center line." <u>Id.</u>  Here, plaintiffs have alleged that the Borough laid out Cherry Lane, which abuts their property, in 1965 and has never opened the street. <u>Id.</u>  They have therefore stated a claim under Section 1961, and the court will deny the motion on this point.

**Conclusion**

For the reasons stated above, the court will grant defendants' motion in part and deny the motion in part.  An appropriate order follows.

.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEANNE ZALOGA; and** | : | **No. 3:10cv2604** |
| **EDWARD ZALOGA,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF MOOSIC;** | : | |
| **MOOSIC BOROUGH COUNCIL;** | : | |
| **MOOSIC PLANNING COMMISSION;** | : | |
| **MOOSIC BOROUGH ZONING BOARD** | : | |
| **OF ADJUSTMENTS;** | : | |
| **JOSEPH MERCATILI;** | : | |
| **JOSEPH DENTE;** | : | |
| **THOMAS HARRISON;** | : | |
| **BRYAN FAUVER; and** | : | |
| **JAMES DURKIN,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 15th day of July 2011, the defendants' motion to

dismiss the complaint (Doc. 2) is hereby **GRANTED IN PART** and **DENIED IN**

**PART**, as follows:

1.  The motion is **GRANTED** with respect to Count I of the complaint;

2.  The motion is **GRANTED** with respect to all claims which accrued before

December 21, 2008 in Counts II and III;

3.  The motion is **GRANTED** with respect to plaintiffs' claims for substantive

due process violations as they relate to defendants' alleged interference with

39

Correctional Care's contract with Lackawanna County in Count III of the

complaint; and

4.  The motion is **DENIED** in all other respects.


**BY THE COURT:**


<u>s/ James M. Munley</u>
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**