THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD ZALOGA and
JEANNE ZALOGA,
      Plaintiffs

v.        3:10-CV-2604
       (JUDGE MARIANI)

BOROUGH OF MOOSIC, et al.,
      Defendants

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion to Quash and for Sanctions (Doc. 54) and Plaintiffs' Cross-Motion to Compel and for Sanctions (Doc. 59). For the reasons that follow, the Court will grant in part and deny in part Plaintiff's Cross-Motion and will not yet rule on Defendants' Motion to Quash. No sanctions will be awarded for or against either party.

### II. Background

On April 5 and 6, 2011, Plaintiffs served Requests for Production of Documents on Defendants seeking the production of all documents and communications regarding or relating to the Zalogas. (Doc. 59, Ex. B). The definition of documents and communications included e-mails. (*Id.* at ¶¶ 8-9). Defendants objected based on overbreadth and irrelevance and responded, "[n]otwithstanding the above stated general and specific objections and without waiver thereof, none." (Doc. 59, Ex. C, ¶ 12). Plaintiffs aver that of all the documents Defendants produced in response to Plaintiffs' Requests for Production of Documents, only one was an e-mail. (Doc. 59, Ex. D). In September 2011, counsel

exchanged e-mails in which counsel for Defendants, Attorney Dadamo, represented, "We have produced every document in our possession that is discoverable and therefore do not have a privilege log." (Doc. 59, Ex. E). Later, in December 2011, counsel for Plaintiffs, Attorney Gallia, served interrogatories on Defendants, seeking disclosure of all e-mail accounts maintained by them since January 1, 2005 (Doc. 59, Ex. F, ¶ 8), and Defendants produced those e-mail accounts accordingly. (Doc. 59, Exs. G, H).[1] In January 2012, counsel for the parties exchanged further e-mails in which Attorney Dadamo confirmed "as I have represented to you in the past, you have all documents in our possession regarding this matter." (Doc. 59, Ex. I).

Dissatisfied with the claims that there were no privileged documents and only one e-mail responsive to Plaintiffs' discovery requests, Plaintiffs prepared subpoenas to the E-mail Providers, dated February 17, 2012.[2] The subpoenas sought the production of any e-mails which included the following terms: Zaloga or Zalogas, Ed or Edward, Jeanne, 910 Johns Drive or 910 John's Drive, Jack Williams or Williams or JWT, Pasonick, Ash, Wingfoot, Berm, and Brazil. John Brazil is the Solicitor for the Borough of Moosic. (Doc. 59, Ex. J). Three days later, Attorney Dadamo objected (1) because of the potential that privileged documents to or from Solicitor Brazil would be produced on cases unrelated to this action and (2) because the subpoenas were "overbroad in the information sought." (Doc. 55, Ex.

---

[1] The e-mail service providers were Google, AOL, Comcast, and CompuServe, hereinafter "E-mail Providers."

[2] The E-mail Providers have not produced any documents to date. At least one E-mail Provider has indicated that it will not produce any e-mails even if the subpoena is valid or a court orders it to produce documents. AOL argues that the obeying the subpoena would violate the Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701 et seq. because by doing so, AOL would release private information. (Doc. 59, Ex. L).

2

C). Attorney Gallia responded that the objections would be "frivolous considering that you have already taken the position that (i) that your clients don't have any emails, and (ii) that there are no privileged documents – the reason you have not provided a privilege log." (*Id.*).

To address Attorney Dadamo's concerns about privilege, on March 12, 2012, Attorney Gallia offered to sequester the documents upon receiving them from the E-mail Providers. He would then have a copy made and sent to Attorney Dadamo for privilege review. (Doc. 59, Doc. K). Attorney Dadamo rejected the proposal because it implied that a colleague of Attorney Gallia would copy the documents before sending them to Attorney Dadamo for privilege review. He counter-proposed that the documents produced by the E-mail Providers be sent directly to him, that he review them first, and then assert privilege objections where appropriate. (*Id.*). After this e-mail, there is no evidence on the record of any further communications between counsel on the matter.

That same day, the Court issued its Order regarding Plaintiffs' discovery dispute with Respondent Jack Williams. (Doc. 53). In compliance with that Order, Jack Williams produced six e-mails[3] from Scott Williams to Defendant Dente. Plaintiffs claim that these e-mails prove that Defendants did not perform their obligations under the discovery rules.

### III. Analysis

Discovery has been fractious in this case, not just between the parties, but also between Plaintiffs and a third party, Jack Williams. Despite the Court's repeated requests

---

[3] Two of the six e-mails were duplicative, so there were four discrete e-mails produced.

for the parties to cooperate during the discovery process, this is now the third time the Court has had to intervene in a discovery-related dispute.[4]

The rules governing discovery allow broad access to relevant information. FED. R. CIV. P. 26(b). At issue between the parties are four subpoenas issued to the above-named E-mail Providers, as well as an allegation that Defendants did not produce documents responsive to Plaintiffs' April 2011 Requests for Production of Documents. FED. R. CIV. P. 34(a)(1)(A) states that:

> A party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: any designated documents or electronically stored information. . .

"Control is defined as the legal right to obtain the documents required on demand." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988). Thus, a party simply cannot claim that it does not physically possess a document as a basis for rejecting a request for production if that party has the legal right to obtain the document.

<u>Plaintiffs' Cross-Motion to Compel</u>

*Relevant and Non-Privileged E-mails*

FED. R. CIV. P. 26(b) says:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the

[4] Plaintiffs filed a Motion to Compel and Motion for Contempt against Jack Williams. (Doc. 18). Then, Defendants filed a Motion for Attorney Fees. (Doc. 32). Finally, Defendants filed a Motion to Quash and for Sanctions (Doc. 54), and Plaintiffs filed a Cross-Motion to Compel Discovery and for Sanctions. (Doc. 59).

action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The Court has considered Defendant's Brief in Opposition to Plaintiff's Cross-Motion to Compel (Doc. 62) and finds Defendants arguments unpersuasive. In it, Defendants contend that they do not possess any non-privileged and relevant e-mails responsive to Plaintiffs' requests. Defendants' reasons are the e-mails produced by Jack Williams: (1) were created after this litigation was initiated, (2) were copied to Defendant Dente, not sent by him, and (3) are irrelevant to the claims in the Complaint. "[R]equests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions." FED. R. CIV. P. 34(a)(4) advisory committee's note (1993). Yet, that is what Defendants have done in this case.

In the previous discovery dispute between Plaintiffs and Jack Williams, the Court rejected the argument that any documents that were created after litigation commenced are irrelevant and thus are not discoverable. (Doc. 53). The same logic applies here. As such, any e-mails created after commencement of the litigation are discoverable if they are relevant, non-privileged, and may lead to the discovery of admissible evidence. Most of the e-mails that Plaintiffs received from Jack Williams as a result of the Court's previous Order should have been produced by Defendants in response to Plaintiffs' interrogatories and requests for production, because they were documents/communications received by

Defendant Dente that referred to the Zalogas. The e-mails refer to developments in the underlying state court case, the Complaint in this case,[5] and trucks from Big M Transportation parking overnight at the Jack Williams facility.[6]

Further, it makes no difference that Scott Williams forwarded these e-mails to Defendant Dente. Dente received them, thus subjecting them to Plaintiffs' Requests for Production. Defendants also contend that the e-mails are not relevant to any of the claims in the Complaint, while Plaintiffs argue that these matters comprise "a substantial portion of the facts alleged by Plaintiffs in this action." (Doc. 63, at 5). The Court agrees with Plaintiffs and thus finds the e-mails relevant to the matter at hand.

The Court also has compared the April 2011 Requests for Production served on Defendant Dente (Doc. 59, Ex. B) to the Subpoena *Duces Tecum* served on Jack Williams. (Doc. 18, Ex. G). In the Court's previous Order which decided the dispute between Plaintiffs and Jack Williams, the Court found that Request No. 1 was overbroad. (Doc. 53, ¶ 2). Request No. 1 to Jack Williams sought "[a]ll Documents referring to and/or referencing Dr.

---

[5] The original e-mails about the Complaint in this action and the developments in the state court action were from Richard Williams (counsel to Jack Williams Tire) to Scott Williams. Plaintiffs claim that by forwarding these e-mails to Defendant Dente, Scott Williams "destroy[ed] the attorney/client privilege on communications Williams had with his counsel." (Doc. 63, at 6). Jack Williams is not a party to this case, so the waiver of privilege is not an issue before this Court. Because Defendant Dente possessed these e-mails, and because he was not the holder of any attorney/client privilege, he was obligated to produce these e-mails to Plaintiffs.

[6] The Court is unsure why Jack Williams produced this document in response to Plaintiffs' subpoena *duces tecum*. The e-mail does not refer to the Zalogas, Plan, Proposal, or Berm, and while it does refer to what the Court is assuming is the Jack Williams facility, it was not sent from the Moosic Borough Fire Department, the Moosic Office of Code Enforcement, or the Borough of Moosic Police Department, as required by the subpoena *duces tecum* (*See* Doc. 18, Ex. G, ¶¶ 17-19). Moreover, Attorney Dadamo states that Defendant Dente ran a search of his AOL account using Plaintiffs' search terms in the subpoena to AOL, which allegedly yielded the exact same e-mails as Jack Williams produced (Doc. 62, at 3). The search results show, however, that the e-mail entitled "FW: overnight parking" did not appear. (Doc. 62, Ex. 1). This is because none of the search terms in the subpoena to the E-mail Providers is contained in that particular e-mail. As far as this Court can tell, this document is not one that Defendants would have been obligated to produce to Plaintiffs.

Zaloga, Mrs. Zaloga, and/or the Zalogas." The Requests for Production served on Defendants were similarly broad. (See, e.g., Doc. 59, Ex. B, ¶¶ 30-32). The Court will impose the same limitations as it did previously and order Defendants to produce any non-privileged documents or communications that refer to the Zalogas and relate to the claims set forth in the remaining counts (and with respect to Counts IV and V, going back as far as January 1, 2005) or any defenses. The Court directs the parties to its previous Order for further guidance. (Doc. 53).

Therefore, the Court will order Defendants to conduct a thorough inquiry into all of the e-mail accounts at issue[7] and produce all e-mails (created on or after January 1, 2005) responsive to Plaintiffs' Requests for Production. In complying with the attached Order, Defendants need not use the search terms demanded in Plaintiffs' subpoenas on the E-mail Providers.[8] They must do only what is necessary to meet their discovery obligations in response to the Requests for Production. Defendants are further ordered that to the extent they have objections grounded in privilege, they create a privilege log and produce it to Plaintiffs.

## Spoliation

Because Plaintiffs have uncovered evidence that should have been disclosed previously, they argue that evidence may have been destroyed and ask this Court to

---

[7] These e-mail accounts are: jdente@aol.com; joseph.dente@scrsd.org; moosicpc@moosicborough.comcast.net; bfauver@cclind.com; bjfauver@gmail.com; tgh151@cs.com; mjoemerc@aol.com.

[8] Plaintiffs' Requests for Production made no mention of any documents/communications sent to/from Solicitor Brazil. The Court will address the propriety of seeking e-mails to or from Solicitor Brazil should it become necessary to decide Defendants' Motion to Quash.

appoint a forensic computer expert to gather all of Defendants' hard drives and e-mail servers to determine whether any e-mail evidence has been tampered with or destroyed. The Court will deny this request.

First, there is as yet no evidence that documents or other discoverable evidence has been destroyed. At most, Defendants have failed to produce some discoverable documents. Therefore, the Court will not infer that spoliation has occurred. Second, Plaintiffs seek extraordinary relief when they ask the Court to impose the full cost of that expert on Defendants when there is as yet no determination that evidence has been destroyed.

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

FED. R. CIV. P. 34(a) advisory committee's note (2006). Furthermore, granting such a request may create more problems than it solves. As another federal district court has observed:

> The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance. Imaging of computer hard drives is an expensive process, and adds to the burden of litigation for both parties, as an examination of a hard drive by an expert automatically triggers

8

> the retention of an expert by the responding party for the same purpose. Furthermore, as noted above, imaging a hard drive results in the production of massive amounts of irrelevant, and perhaps privileged, information. Courts faced with this inevitable prospect often erect complicated protocols to screen out material that should not be part of discovery. Again, this adds to the expense and complexity of the case.
>
> This court is therefore loathe [sic] to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information. Such conduct is always a possibility in any case, but the courts have not allowed the requesting party to intrude upon the premises of the responding party just to address the bare possibility of discovery misconduct.

*Diepenhorst v. City of Battle Creek*, No. 1:05-cv-734, 2006 U.S. Dist. LEXIS 48551, *10-11 (W.D. Mich. June 30, 2006) (internal citations omitted). Plaintiff's request is unduly intrusive and can be satisfied with less drastic measures.[9]

The Court will order Defendants to comply with the original discovery requests of April 2011 and to provide a privilege log within thirty (30) days of the date of this Order. Defendants are required to produce any non-privileged documents they have in their possession, custody, or control (including any documents they currently do not physically possess but to which they have the legal right) responsive to Plaintiffs' Requests for Production. Within fifteen (15) days of Defendants' production and after conferring with Defendants in good faith, if Plaintiffs still believe that evidence has been withheld, Plaintiffs may notify the Court about their concerns and the reasonable bases for them. The Court will then decide Defendants' Motion to Quash.

---

[9] Defendants state in their Brief in Opposition to the Cross-Motion to Compel that they are "willing to permit Plaintiffs to conduct a forensic search of their computers at Plaintiffs' expense using agreed upon search terms by the parties." (Doc. 62, at 2). The Court determines it is not appropriate at this time to take that step.

*Sanctions*

As stated above, the Court will not appoint such an expert at this time. Neither will the Court place the cost of a forensic computer expert on Defendants or find that Plaintiffs are entitled to an adverse inference against Defendants.

Plaintiffs also seek attorney's fees in connection with filing this motion. A party is entitled to attorney's fees in connection with a motion to compel only if it is granted. FED. R. CIV. P. 37(a)(5)(A). If the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C). Because the Court is granting Plaintiffs' Cross-Motion to Compel in part and denying it in part, the Court will deny the motion for attorney's fees.

## Defendants' Motion to Quash

Because the Court is granting Plaintiffs' Cross-Motion to Compel, it will not yet rule on Defendants' Motion to Quash. The E-mail Providers have not produced any e-mails to date, and based on AOL's letter (Doc. 59, Ex. L), they likely will not produce any without consent from Defendants.

## IV. Conclusion

Plaintiffs' Motion to Compel is granted in part and denied in part. Within thirty (30) days of the date of this Order, Defendants are required to produce any relevant and non-privileged documents they have in their possession, custody, or control (including any documents they currently do not physically possess but to which they have the legal right of

possession) responsive to Plaintiffs' Requests for Production that were created on or after January 1, 2005. Within fifteen (15) days of Defendants' production and after conferring with Defendants in good faith, if Plaintiffs still believe that evidence has been withheld, Plaintiffs may notify the Court about their concerns and the reasonable bases for them. The Court will then decide Defendants' Motion to Quash.

Once again, the Court orders the parties to cooperate with one another. This is the third discovery-related dispute on which the undersigned has had to intervene. The apparent animosity between the attorneys is impeding their ability to cooperate in the discovery process. Despite the Court's admonitions to cooperate, the parties (through their respective counsel) have persisted in engaging in petulant intransigence and pedantic opposition. If any further disputes should arise after the conclusion of this one, the Court will not look favorably on either party. This Court orders that counsel "cooperate in discovery so it can proceed without day-to-day supervision by the court." *General Mill Supply Co. v. SCA Srvcs., Inc.*, 697 F.2d 704, 712 (6th Cir. 1982).

Robert D. Mariani
United States District Court Judge