IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE ZALOGA, | : | Civil Action No. 3:10-CV-2604 |
| EDWARD ZALOGA, D.O., C.P.A., | : | |
| CORRECTIONAL CARE, INC., | : | |
| | : | |
| Plaintiffs, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF MOOSIC, | : | |
| MOOSIC BOROUGH COUNCIL, | : | |
| MOOSIC BOROUGH PLANNING | : | |
| COMMISSION, | : | |
| MOOSIC BOROUGH ZONING | : | |
| BOARD OF ADJUSTMENTS, | : | |
| JOSEPH MERCATILI, | : | |
| JOSEPH DENTE, | : | |
| THOMAS HARRISON, | : | |
| BRYAN FAUVER, | : | |
| JAMES DURKIN, | : | |
| WILLARD HUGHES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

June 16, 2015

## I.  BACKGROUND:

This memorandum opinion is the dispositive opinion in response to the

Defendants' motion for summary judgment.  The motion will be granted in part

and denied in part.

1

The Plaintiffs are husband and wife, Edward and Jeanne Zaloga.  Edward

Zaloga is a physician whose medical services are provided by his company,

Correctional Care Inc., also a Plaintiff here.

Defendants are the Borough of Moosic, a municipality situate in

Lackawanna County, Pennsylvania; the Moosic Borough Council; the Moosic

Borough Planning Commission; the Moosic Borough Zoning Board of

Adjustments; Joseph Mercatili, individually and in his official capacity as

President of Moosic Borough Council; Joseph Dente, individually and in his

official capacity as Vice President of Moosic Borough Council and member of the

Moosic Borough Planning Commission; Thomas Harrison, individually and in his

official capacity as Moosic Borough Manager; Bryan Fauver, individually and in

his official capacity as Chairman of Moosic Borough Planning Commission;

James Durkin, individually and in his official capacity as Moosic Borough Zoning

and Enforcement Officer; and Willard Hughes, a Borough codes officer.

## II.  DISCUSSION:

## A.  Undisputed Facts

Before the Court turns to the undisputed facts relevant to the instant causes

of action, the Court will first discuss some background facts.  Prior to the parties'

dispute, there were disputes between the Zalogas and a non-party business, Jack

Williams Tire Company.  Although those facts are not directly related to the instant cause of action, they are tangentially related and necessary for a proper understanding of the complaint.

### *Interactions between the Zalogas and non-party Jack Williams Tire Company*

In 1994, Dr. and Mrs. Zaloga moved into their home at 910 Johns Drive, Moosic, Pennsylvania.  Behind the Zalogas' home is a narrow road known as Carey Lane.  On the other side of Carey Lane is Jack Williams Tire.

In 2007, the Borough of Moosic's Planning Commission approved an expansion of Jack Williams Tire's facility by issuing a building permit to Jack Williams Tire.  The Zalogas entered into an agreement with Jack Williams Tire regarding the height of a "berm" referenced in the building permit.   In April 2008, the Zalogas filed suit in the Court of Common Pleas of Lackawanna County alleging that Jack Williams Tire breached the agreement between the parties by building the berm to 974 feet above sea level, as opposed to 982 feet; failing to prevent truck operation during non-business hours; and failing to remove vegetation between the two properties.  In July 2008, the Zalogas and Jack Williams Tire entered into a settlement agreement that required the berm to built to a height of 980 feet above sea level.

Subsequently, however, in October 2008, the Moosic Borough Planning

Commission denied Jack Williams Tire's request to increase the height of the berm.   Jack Williams Tire appealed the decision of the Planning Commission to the Lackawanna County Court of Common Pleas; on November 20, 2009, Judge Robert A. Mazzoni affirmed the decision of the Planning Commission.

The Zalogas returned to the Lackawanna County Court of Common Pleas, and filed suit to have the settlement agreement enforced, regarding the same berm height, vegetation, and truck operation issues.   On March 30, 2011, Judge Mazzoni denied the Zalogas' petition.  The Zalogas sought reconsideration of this decision, which Judge Mazzoni also denied on April 21, 2011.  The Zalogas then appealed to the Superior Court of Pennsylvania.  That appeal was subsequently denied on February 7, 2012.

With this background in mind, the Court now turns to the facts that formulate the underlying complaint.

### *Interactions between the Zalogas and Defendants*

In early 2009, Jack Williams Tire appealed the denial of land use conditions, and in anticipation of that hearing, the Moosic Borough Solicitor, John J. Brazil, Esquire sent surveyors out to Jack Williams Tire/Zaloga properties.  The parties dispute what business the surveyors were tasked to conduct.  The parties do agree that two men went to survey the property, and the Zalogas called the

4

Borough police to have the men leave the property, which the men promptly did after explaining their reason for being there.

The Defendants assert that the surveyors were sent to prepare for a court hearing the Zalogas had initiated by complaining of excessive sound coming from Jack Williams Tire. Mr. Brazil testified at his deposition that believed that the Zalogas had built their home onto Carey Lane beyond their property line, which would explain why they might hear extra noise.  ECF No. at 141-4 164.   The Zalogas assert that sending the surveyors was a retaliatory action so the Borough could sue the Zalogas for having built some of their home on Carey Lane.  The Zalogas assert that this was without a doubt retaliatory based on a statement by Mercatili in his deposition that "I would assume that's why [Solicitor Brazil] did it [sent surveyors] because "if you're going to accuse somebody of something you better have some knowledge and you have to have a professional person that's qualified to do that, to state whether that's on Carey Lane or not, because John couldn't file a suit against him or do whatever he wants to do if he didn't have a professional or a guy that's qualified to do it."  ECF No.  149-4, Exhibit 9 at 161:16-163:7.

On January 6, 2011 the Zalogas again called the police complaining about a truck idling at night.  The police officer directed the truck driver to leave the

residential area.  When asked at his deposition "What did you do in response to this alleged violation?" Defendant Willard Hughes, the current Zoning and Code Enforcement officer for Moosic Borough, responded by saying "I have no jurisdiction on idling of vehicles...I can't write them –it's under Pennsylvania Motor Vehicle Code.  According to DEP[1], the only people that could issue citations are the State Police and Moosic Police Department."  ECF No. 142-2 at 37-8.

On January 12, 2011, the Zalogas sent a letter to the Borough that complained about the after-hours truck.  Defendant Hughes spoke with the president of Jack Williams Tire, Scott Williams.  The Plaintiffs dispute what transpired during that conversation between Mr. Hughes and Mr. Williams.  Accordingly, the Court views the facts in the light favorable to Plaintiffs as the non-moving party and takes no further facts from the conversation, other than that it is undisputed that it occurred.  However, the Court notes that the Defendants assert that Defendant Hughes "tries to work with people in the Borough to give them a chance to correct problems instead of issuing citations, if at all possible, to get compliance faster and to avoid spending "taxpayer monies on magistrate fees

---

[1]It is not clear from the record what the acronym "DEP" was intended to represent.

and lawyer fees" where unnecessary.  ECF No. 139 at 7 ¶ 39. On the other hand,
Plaintiffs assert that "Hughes selectively enforces code and zoning violations and,
as it relates to the Zalogas, issued a violation notice threatening criminal "charges"
without giving any opportunity to first correct a purported violation."  ECF No.
149-1 at 6 ¶ 39.

The parties do agree that Scott Williams contacted the trucking company
responsible for the violation, Big M Transportation, which assured Mr. Williams
in an e-mail that no further violations would occur.  This email was forwarded to
Defendant Joseph Dente, Vice President of the Moosic Borough Council and a
member of the Moosic Borough Planning Commission.

On February 18, 2011, the Zalogas sent a letter to the Borough complaining
about tires stacked outside a different Jack Williams Tire Company location, not
the location adjacent to the Zalogas' home.  "Dr. Zaloga admitted that the tires did
not affect him in any way."  ECF No. 139 at 9 ¶ 59 and ECF No. 149-1 at 10 ¶ 59.
Once again, the parties dispute what then transpired in a conversation between Mr.
Hughes and a representative from Jack Williams Tire.   Plaintiffs dispute if a
citation was issued based on this violation, but the exhibits provided indicate that
the Office of Code Enforcement did issue a citation to Jack Williams Tire. *See*
Feb. 23, 2011 Letter,  ECF No. 145-7 at 2.

On March 17, 2011, the Zalogas sent a letter to the Borough complaining about a truck idling at 5:30 a.m.   Again, a factual dispute arises as to what transpired during a conversation between Mr. Hughes and Scott Williams. Defendants assert that Defendant Hughes again spoke to Mr. Williams, who explained a new employee had been at fault, and that Defendant Hughes issued a written warning.  However, Plaintiffs assert that Mr. Brazil instructed Defendant Hughes to not issue a citation or notice of violation.

On March 18, 2011, the Zalogas sent a letter to the Borough complaining that a dumpster was located too close to the Jack Williams Tire facility and that two other dumpsters did not have screens around them.  *See* March 18, 2011 Letter, ECF No. 145-11 at 2-3.   Again, the parties dispute what may have transpired in a conversation between Mr. Hughes and Mr. Williams.   Mr. Brazil advised Mr. Hughes in a letter that Jack Williams Tire would have sixty (60) days within which it may use the temporary construction dumpster, after which time Mr. Hughes could issue a citation.  *See* March 31, 2011 Letter, ECF No. 145-19 at 2.

On March 21, 2011, the Zalogas sent another letter to the Borough complaining that Jack Williams Tire left its gate open for 90 minutes on a Sunday afternoon and moved vehicles in the parking lot on both a Saturday and a Sunday.

Again, the parties dispute what transpired next in a conversation between Mr. Hughes and Mr. Williams.

On August 11, 2011, Jack Williams Tire sent a letter to the Borough complaining that the Zalogas' basketball hoop was located in a position that resulted in children playing basketball on the street. On August 24, 2011, Mr. Hughes sent the Zalogas a letter explaining that the basketball hoop violated the Borough's safety ordinances. The Zalogas assert that this letter was "threatening" as it stated that "charges will be filed against you at the Magistrate." Apparently, the basketball hoop did not, in fact, violate any Borough code, and as a result, Mr. Hughes subsequently retracted his August 24, 2011 letter. The Zalogas assert that the letter was intended to be retaliatory.

On August 19, 2011, the Zalogas sent a further letter to the Borough complaining about the aforementioned berm height. On September 13, 2011, Solicitor Brazil contacted the Borough's engineer, Howard Ash, about the berm height. In a responsive letter on October 31, 2011, Mr. Ash identified the problems with the berm. Mr. Hughes sent Mr. Ash's letter to Jack Williams Tire and directed the company to correct the inadequacies with the berm. What transpired next is again in dispute.

On October 18, 2011, Mr. Hughes on behalf of Moosic Borough filed a

civil action against Jack Williams Tire; but it was later dismissed.[2]   According to

Solicitor Brazil in his deposition, the matter was dismissed as improperly filed.

On December 6, 2011, the Zalogas sent a letter to the Borough complaining

that Jack Williams Tire was maintaining a junk yard on its property.  Mr. Brazil

advised that a business can store some of its product outside without it rising to

the level of a junk yard.  Mr. Hughes did not issue a citation, concluding that Jack

Williams Tire was not operating a junk yard.

The Zalogas assert that the Defendants were retaliatory toward them for

failing to investigate the code and zoning violations that the Zalogas allege were

committed by Jack Williams Tire.

### Dr. Zaloga's business - Correctional Care Inc.

Dr. Zaloga owns and operates a business, Correctional Care Inc. (hereinafter

"Correctional Care").  Correctional Care is a company that provides medical

---

[2] The Court knows nothing further about this action.  Although the facts are admitted, Defendant's cite to exhibits CCC and I in support of these statements. Defendants assert in paragraph 72 of their statement of material facts, ECF No. 139, that Exhibit CCC is the civil complaint, in fact, Exhibit CCC contains only letters from Mr. Hughes to Mr. Zaloga.  *See* ECF No. 145-29, Exhibit CCC. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (Posner, J.).  Accordingly, the Court did not dig through the record to find this fact, which, regardless, would not be a "truffle" of a fact, as it would not formulate the factual basis of any of the counts in the complaint.

services to the Lackawanna County Prison.  Beginning in 2004 and continuing

through the present, Correctional Care has had a contract with that prison.   Dr.

Zaloga asserts that Moosic Borough Council Chairman Joseph Mercatili and a

now deceased, non-defendant, former mayor of the Borough, John Segilia, tried to

pressure Prison Board Members to vote against the Correctional Care contract

renewal.   The Defendants assert that the Plaintiffs lack non-hearsay evidence of

these conversations.  In response, Plaintiffs put forth the affidavit of Andrew J.

Jarbola, Esquire, the Lackawanna County District Attorney and a member of the

Prison Board.[3]

### *Plaintiffs Counter Statement of Material Facts*

In addition to responding to Defendants statement of material facts, ¶¶ 1-

158, as required by Local Rule 56.1, Plaintiffs filed a "counter statement of

material facts."  ECF No. 149-1 ¶¶ 159-246.  Because the additional paragraphs

---

[3] The Defendants attempt to use a red-herring argument to argue that the affidavits are inadmissible as hearsay as they are not the affidavits of the declarants.  However, what Defendants seem to miss is that all of the declarants at issue, with one exception, the now deceased former mayor of Moosic, would be able to testify as to their own statements at trial, so the Defendants' argument is unsupported by law. "[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. in a form that would be admissible at trial."  *Bouriez v. Carnegie Mellon Univ*., No. CIV.A. 02-2104, 2005 WL 2106582, at *8 (W.D. Pa. Aug. 26, 2005) (internal citations omitted).

set forth by Plaintiffs are nothing contemplated by the local rules, Defendants did

not respond.  The Court will nevertheless accept the additional facts for two

reasons.  First, the additional facts are supported by references to the record.

Second, although the additional facts are not something that was contemplated by

the Local Rules, Defendants framed the issue narrowly in their statement of

material facts.   Accordingly, Plaintiffs, to complete the narrative surrounding the

parties' dispute, filed the additional facts which Defendants certainly could have

responded to, but chose not to.

Be that as it may, the additional elements to this story, according to

Plaintiffs, are as follows.

The Jack Williams Tire location behind the Zaloga's home is the main Jack

Williams Tire location, as it serves as a distribution center, retail tire store, auto

repair shop and houses the corporate offices of the company.  In 2005, the

Plaintiffs learned that Jack Williams Tire was planning to expand its facility.

Plaintiffs stated that

> As a result of the retredding/recapping work performed at the J[ack Williams Tire] facility, the Zalogas' property was routinely and consistently covered in rubber particles, soot, smoke, and offensive and noxious rubber and other odors produced by and from the facility. These contaminants adversely impacted Plaintiffs' home, use and quiet enjoyment of their property, home value, and property, as well as the homes, home values and properties of Plaintiffs' neighbors.

ECF No. 149-1 at ¶¶164-5.

In early August 2005, Dr. Zaloga sent a petition to the Borough, that was signed by himself and several of his neighbors protesting "significant public nuisance and zoning violations" being committed by Jack Williams Tire.  ECF No. 149-1 at ¶ 166.  Later that same month, he sent a second petition.

Subsequently, Dr. Zaloga attended public hearings to protest the expansion of Jack Williams Tire, and his statements were often reported in local newspapers. He then sent countless more letters and petitions to protest the expansion.

In March 2009, Dr. Zaloga filed objections to the nomination petitions of Segilia and Mercatili objecting to their respective nomination petitions for public office.  Dr. Zaloga's objections were also reported in the local newspaper. Plaintiffs assert that Mercatili is a policy-maker within Moosic Borough Council.

In April 2009, Dr. Zaloga's attorney, Anthony Lomma, Esquire, called Dr. Zaloga to tell him that he had heard from a Prison Board Member that Mercatili and Segilia were trying to block Correctional Care's contract renewal with the Lackawanna County Prison.  "Dr. Zaloga was "terrified" at the prospect of having Mercatili and Segilia exert their political and official influence to block the renewal of the CCI contract."  ECF No. 149-1 at 36 ¶ 198.

District Attorney Jarbola had a conversation with Lackawanna County

13

Controller and Prison Board Member, Ken McDowell, who told Jarbola that

"[Segilia and Mercatili] are pissed at both of us [] for considering a vote in favor

of renewing CCI's contract."  ECF No. 149-1 at 36-7 ¶ 204.  McDowell was

concerned that Segilia and Mercatili would block his own re-election bid for

County Controller because of his potential vote in favor of CCI's contract renewal.

Additionally, John Szymanski, the Lackawanna County Sheriff and another

Prison Board member ("Szymanski") "was approached by [Segilia and Mercatili]

who stated...that they would support [Szymanski's] campaign for re-election *only*

*if* [Szymanski] opposed Dr. Zaloga's company's contract renewal to provide

medical services to the Lackawanna County Prison."" ECF No. 149-4 at 22 ¶5-6.

The reason they wanted Dr. Zaloga's contract renewal blocked was because of his

ongoing legal battles in Moosic combined with his opposition to the nominating

petitions of Segilia and Mercatili.

In their answers to interrogatories, Defendants acknowledge only that

"Defendant Joseph Mercatili, Moosic Borough Council President had one

discussion with one Lackawanna County Prison Board member about the number

of lawsuits brought against Correctional Care regarding medical malpractice and

1983 civil rights violations." ECF No. 149-5, Exhibit 30 at 104 ¶4.

Ultimately, despite the alleged attempts by Mercatili and Segilia to block

the contract renewal, the Prison Board again awarded a three-year contract to Correctional Care.

**B. Standard of Review:**

### 1. Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In  opposing summary judgment, the non-moving party "may not rely

merely on allegations or denials in its own pleading; rather its response must …

set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The non-moving party "cannot rely on unsupported allegations, but must go

beyond pleadings and provide some evidence that would show that there exists a

genuine issue for trial." *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir.

2000). Arguments made in briefs "are not evidence and cannot by themselves

create a factual dispute sufficient to defeat a summary judgment motion." *Jersey*

*Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences therefrom must be viewed in the

light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442

F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement

about the facts or the proper inferences that a factfinder could draw from them.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the

mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported  motion for summary judgment; there must be a

genuine issue of material fact to preclude summary judgment." *Anderson*, 477 U.S.

at 247-48.

      2.  *42 U.S.C. § 1983:*

In order for plaintiffs to prevail under § 1983 they must establish two elements: first, that the conduct complained of was committed by a person acting under color of state law; and second, that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).  Defendants do not dispute that the conduct complained of was committed by a person or persons acting under color of state law.  Defendants dispute the second element that establishes a claim under §1983; they argue that Plaintiffs were not deprived of the rights, privileges or immunities secured by the Constitution or laws of the United States.

## C. Analysis:

### 1.  Count 1: Retaliation in violation of the First Amendment as incorporated by the Fourteenth Amendment

The *First Amendment* to the United States Constitution protects citizens right to speech.[4]  Accordingly, the government may not retaliate when our citizens

---

[4]It is important to note, however, for the lay reader of this opinion, that this right is not absolute.  "[T]he Supreme Court never has accepted the view that the *First Amendment* prohibits all government regulation of expression."  ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES THIRD EDITION (Aspen Publishers 2006), *and see Konigsberg v. State Bar of California*, 366 U.S. 36; 81 S. Ct. 997; 6 L. Ed. 2d 105 (1960).

exercise their Constitutionally protected rights.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000), *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 574, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").  "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 415-416 (4th Cir. 2006), *citing Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000); *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) ("If the government could deny a benefit to a person because of  his constitutionally protected speech or associations, his

exercise of those freedoms would in effect be penalized and inhibited").  "Thus, by engaging in retaliatory acts, public officials place informal restraints on speech "allowing the government to 'produce a result which [it] could not command directly.'"  *Suarez Corp. Indus.,* 202 F.3d at 685.  "Such  interference with constitutional rights is impermissible.""  *Id. citing Perry v. Sindermann*, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972) (alterations in original) (citation omitted).

Retaliation claims began in the public employment context to protect employees from being punished by their government employer for their speech. *See Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008), cert. denied, 128 S. Ct. 2445 (2008), *and see Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563; 88 S. Ct. 1731; 20 L. Ed. 2d 811 (1968) (the seminal case on public employee *First Amendment* speech rights), *and see Garcetti v. Ceballos*, 547 U.S. 410; 126 S. Ct. 1951; 164 L. Ed. 2d 689 (2006).  *Jenkins* was the first case to expand *First Amendment* retaliation claims from the public employment context to a viable cause of action for private citizens.

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." *Balt.*

*Sun Co.*, 437 F.3d at 416, *citing Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).   "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one -- we determine whether a similarly situated person of "ordinary firmness" reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Balt. Sun Co.*, 437 F.3d at 416, *citing  Constantine*, 411 F.3d at 500; *Wicomico County*, 999 F.2d at 786; *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (tailoring adverse impact analysis to specific circumstances presented). "Because our analysis of the adverse impact is objective, it can be resolved as a matter of law." *Balt. Sun Co.*, 437 F.3d at 416.

   "Illustrating the observation that "not every [government] restriction is sufficient to chill the exercise of First Amendment rights," we have recognized a distinction between an adverse impact that is actionable, on the one hand, and a *de minimis* inconvenience, on the other." *Balt. Sun Co.*, 437 F.3d at 416.  "Rather, a § 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights." *Suarez Corp. Indus.*, 202 F.3d at 685, *See Wicomico County*, 999 F.2d at 785 ("In order to

state a retaliation claim, Appellees are required to show that WCDC's actions adversely impacted these First Amendment rights."). "[W]e must measure the adverse impact against an objectively reasonable plaintiff." *Balt. Sun Co.*, 437 F.3d at 419. "To amount to retaliation, the conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."" *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. Appx. 817, 824 (3d Cir. 2009) (unpublished) *citing McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

"In a proximate vein, the Supreme Court has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would "plant the seed of a constitutional case" in "virtually every" interchange." *Balt. Sun Co.*, 437 F.3d at 416, *citing Connick v. Myers*, 461 U.S. 138, 148-49, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); *see also id.* at 143 (holding that, in the government employment context, public employers can reprimand or punish employees for their speech when that speech does not touch on matters of public concern); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448-49 (4th Cir. 2004); *cf. Umbehr*, 518 U.S. at 675 (noting that retaliation "may be justified [i.e., unactionable] when legitimate countervailing government interests are sufficiently strong"). "Thus, the *Connick*

Court recognized that the retaliation cause of action must be administered to balance governmental and private interests so as not to impose liability in everyday, run-of-the-mill encounters." *Balt. Sun Co.*, 437 F.3d at 416. "[A] public official's malicious intent, taken alone, cannot amount to a retaliatory response." *Id.* at 420. "The plaintiff in a retaliation case must challenge adverse *conduct or speech." Id. citing Constantine*, 411 F.3d at 500 (repeating that retaliation claims challenge government "conduct").

"Illustrating the second *DiMeglio* (*DiMeglio v. Haines,* 45 F.3d 790 (4th Cir. 1995) observation that not "every restriction [is] actionable, even if retaliatory," we have recognized that some government actions, due to their nature, are not actionable even if  they satisfy all the generally articulated elements of a retaliation claim." *Balt. Sun Co.*, 437 at 416-417. "When the challenged government action is government speech, there is no retaliation liability -- even if the plaintiff can demonstrate a substantial adverse impact -- unless the government speech concerns "private information about an individual" or unless it was "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow."" *Id.* at 417, *citing Suarez*, 202 F.3d at 689. "Other courts, likewise, have held that there is no retaliation when the government's alleged retaliatory action was government speech." *Balt.*

22

*Sun Co.*, 437 F.3d at 417 *citing*, *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997); *accord Kirby*, 388 F.3d at 450 n. 8. "This limitation on the retaliation cause of action based on government speech is necessary to balance the government's speech interests with the plaintiff's speech interests." *Balt. Sun. Co.*, 437 F.3d at 417, *citing Suarez*, 202 F.3d at 688-89.

"Determining whether a plaintiff's *First Amendment* rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus.,* 202 F.3d at 686, *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) ("The definition of adverse action is not static across contexts.").

As Judge Hamilton wrote for the *Suarez* court:

> Just as the nature of the retaliatory acts impacts whether a public employee's *First Amendment* rights were adversely affected, so too the nature of the retaliatory acts impacts whether those acts are actionable when a private citizen is the speaker and a public official is the retaliator. For example, a public official who restricts the award of or terminates public benefits based on the citizen's exercise of his *First Amendment* rights adversely affects that citizen's *First Amendment* rights. *See, e.g., Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 686, 135 L. Ed. 2d 843, 116 S. Ct. 2342 (1996) (holding that the termination of a garbage contract constituted retaliation for an independent contractor's exercise of freedom of speech); *Sherbert v.*

> *Verner*, 374 U.S. 398, 409-10, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963) (holding that retaliation existed where the government denied unemployment benefits to a person whose religion precluded her from accepting a job that required her to work on Saturdays). The same officials, however, are obviously permitted to require the government contractor to submit documentation that no public funds were spent on espousing political views, or to require a person seeking unemployment benefits to fill out an additional form explaining why she cannot work on Saturdays.

*Suarez Corp. Indus.*, 202 F.3d at 686.

"In general, constitutional retaliation claims are analyzed under a three-part test." *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. Appx. 817, 823 (3d Cir. Pa. 2009) (unpublished) *citing Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). " Plaintiff must prove (1) that [it] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Id.*

The dispute is centered around the second element.  It is well established that under the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness'' from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005), *accord Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003).

There is no dispute that Dr. Zaloga has exercised his right to free speech. What is in dispute is whether  the government entity responded with retaliation.

24

The Court concludes that this claim survives, but in a much more limited manner than in which it was brought.  The only actionable claim of retaliation is the alleged attempt to block the renewal of CCI's contract.  Although the claim is premised on Mercatili's responsive speech, to which he also has protected rights, "[w]hen the challenged government action is government speech, there is no retaliation liability -- even if the plaintiff can demonstrate a substantial adverse impact -- unless the government speech concerns "private information about an individual" or unless it was "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow."" *Balt. Sun Co., supra.*

In the case at bar, it appears that Plaintiffs may be able to convince a jury that Mercatili's speech against Zaloga and CCI went beyond that of protected speech and wold deter a person of ordinary firmness from exercising his rights in the future. Dr. Zaloga and CCI have alleged facts that show that the efforts were made to orchestrate the non-renewal of his contract motivated by his public opposition to the nomination petitions of Segilia and Mercatili.  *See Board of County Com'rs, Wabaunsee County, Kan. v. Umbeher*, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed. 2d 843 (1996).  Mayor Segilia, now deceased,  is not a defendant to this action; consequently, this count survives as to Joseph Mercatili.

The remainder of the alleged acts of retaliation, even in combination, do not rise to the level of an actionable retaliation claim.  Plaintiffs attempt to rely on *Majer v. Township of Long Beach*, 2009 WL 3208419, 2009 U.S. Dist. LEXIS 90599[5], for the proposition that the cumulative effect of retaliatory actions can formulate a claim.  While this statement of the law from that case is true, the plaintiff there, Anthony Majer, actually experienced a series of allegedly retaliatory acts. Mr. Majer was issued multiple citations and summons allegedly in retaliation for his speech.

In this case, the basis of the Zalogas claim is made up of a combination of inconsequential and routine municipal acts that, quite frankly, they have blown out of proportion and now expect the Court, then a jury, will find retaliatory.  There is no evidence of any adverse action taken against the Zalogas (other than the aforementioned claim against Mercatili).  "The Court must mindful of the

---

[5]Additionally, the Zalogas presented several other distinguishable cases not dealt with by the undersigned elsewhere in this opinion.  First, *Gagliardi v. Vill. of Pawling*, 18 F.3d 188 (2nd Cir. 1994) was a matter at the motion to dismiss stage, and therefore the standard of review by the Court was entirely different than that undertaken here.  *Nestor v. Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 31 (1st Cir. 1992) involved evidence of discrepant treatment of plaintiff there and others in the community, evidence not presented by the Zalogas here.  Finally, *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003) was also considered on an entirely different standard of review after the trial judge there had granted judgment as a matter of law to defendant following a trial where the jury had found in favor of plaintiff.

distinction between an adverse impact that is actionable, on the one hand, and a *de minimis* inconvenience, on the other." *Balt. Sun Co.*, 437 F.3d at 416.  An objectively reasonable person simply could not find, that even in combination, the actions of the municipality through it's employees were retaliatory.  "[T]he adverse-action requirement is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Holzemer v. City of Memphis* 621 F.3d 512, 524 (6th Cir. 2010) (internal citations omitted.)  Perceived unkindness has no remedy at law.

In the case before this Court, the Zalogas did not receive citations and summons as Mr. Majer did.   The Zalogas claim that Defendant Hughes did not sanction, fine or charge  Jack Williams Tire in the manner that they demanded. The Zalogas do not get to dictate how Moosic Borough deals with alleged code violations.  Failure to get your way does not constitute retaliation.

Next, the Zalogas claim that surveyors were sent to their house in retaliation.  There is no evidence that the surveyors undertook any retaliatory acts toward the Zalogas.  The surveyors did not approach the Zaloga home, they did not threaten the Zalogas, they did not even speak to the Zalogas; they were on site only to perform a job. The Zalogas presented enough to survive a motion to

dismiss as to this allegation, as they theorized in their complaint that the surveyors were present to threaten them, but then presented no evidence of an actual threat. The only evidence presented is the simple presence of the surveyors conducting a survey.  Moreover, when the police arrived, the surveyors promptly showed identification and immediately left the property.   Despite the overwrought allegations that the Zalogas were harassed and intimidated by the surveyors, there is absolutely no evidence that there was any interaction between the surveyors and the Zalogas.  Nor is there evidence of any subverted intent to harass, intimidate, or take any other action against the Zalogas.

The exhibits clearly show that surveyors were sent to survey the berm height in preparation for a court hearing; notably, a hearing about berm height which was placed at issue based on the prosecution of claims by the Zalogas  The speech of a person of ordinary firmness would not be chilled by surveyors surveying the height of a berm.

Finally, one letter to the Zalogas about their children playing basketball in the street, a letter that was quickly retracted, is again, *de minimis*, and not objectively retaliatory.  Allowing the Zalogas to proceed on their retaliation claim would "plant the seed of a constitutional case" in "virtually every" interchange." *Balt. Sun Co., supra.*

Additionally, the claim does not survive against the Borough and its related entities, as the Plaintiffs have not shown any policy or custom of the municipality caused the alleged retaliation, but merely the actions of two rogue political candidates. *Monell* provides that a municipality is not vicariously liable for the actions of its employees, unless the alleged violations are the result of an official governmental policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality could be sued if an official government policy or custom caused a constitutional violation.) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under § 1983 for the actions of its agents because there is no respondeat superior theory of municipal liability.") (emphasis added) (internal quotation marks omitted); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). While *Monell* bars Section 1983 actions based on a theory of respondeat superior, liability may be imposed on a municipality or an organization acting under color of state law where constitutional injury results from the decisions of an official with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is

final.").

Liability in this matter cannot be imputed to the municipality as Segilia and Mercatili did not have final decision making authority as to the CCI contract renewal, which is clearly evidenced by the fact that the contract was renewed by the Lackawanna County Prison Board despite their alleged actions.  Accordingly, there is no basis upon which liability can be imputed past the lone survivor, Defendant Mercatili.

Although Defendants argue that they are entitled to qualified immunity (bearing in mind that this action has been winnowed to Mercatili alone), this determination cannot be made by the Court at this time, but must be left to a jury. The Supreme Court in *Saucier v. Katz* mandated a two-step analysis concerning qualified immunity: first, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and second, whether that right was clearly established.  533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202.  The Supreme Court held, however, that *Saucier's* "rigid order of battle" is not a mandatory requirement. *Pearson v. Callahan*, 555 U.S. 223, 235, 129 S.Ct. 808, 172  Ed. 2d 565 (2009).  Lower courts can use their

discretion to decide which of the two prongs to consider first. *Id.* at 818. The first prong of *Saucier,* asking if the facts alleged show the officer's conduct violated a constitutional right, is, as the words "facts alleged" indicates, a fact question for the jury. The second prong of *Saucier*, is a matter of law for the Court's determination.

Turning to the question of law first, the right against government retaliation for exercising ones right to speech is firmly established, as delineated above.  As to the remaining prong, however, the Court finds that there are disputed facts as to whether Mercatili violated the rights of Dr. Zaloga and CCI.  Consequently, this issue must be left for a jury to determine.  Accordingly, qualified immunity must be denied at this time without prejudice to be re-raised at trial.

**2.  *Count 2: Substantive Due Process in violation of the Fourteenth Amendment***

"To prevail on a non-legislative substantive due process claim a plaintiff must establish as a threshold matter that [she] has a protected property interest to which the Fourteenth Amendment's [substantive] due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (Alito, J.) (*quoting Woodwind Estates Ltd. v. Gretkowski*, 205 F.3d 118,  123 (3d Cir. 2000)). Not all property interests are so protected, and whether a particular species of property receives substantive due process protection "is not determined by

reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Nicholas*, 227 F.3d at 140.   "[S]o far," at least in this Circuit, the courts "have limited non-legislative substantive due process rights to real property ownership," and have "declined to recognize a fundamental property interest in a variety of other circumstances." *Connection Training Serv. v. City of Philadelphia*, 358 F. App'x 315, 320 (3d Cir. 2009).

Once this property interest is established, a court must then decide whether the actions of a state official inappropriately infringed this interest. Courts have determined that substantive due process rights are violated by state actors only when those actors' behavior "shocks the conscience." The United States Supreme Court has defined such behavior as "conduct intended to injure in some way unjustifiable by any government interest." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Conscience-shocking behavior consists of "only the most egregious and arbitrary official conduct." *Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003). Behavior that shocks the conscience depends on the facts of the case, and the court's "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of the circumstances before any abuse of power is condemned as conscience-shocking." *Id.; See also United Artists Theatre Circuit v. Twp. of*

32

*Warrington*, 316 F.3d 39s, 399-400 (3d Cir. 2003) (holding that "executive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context.").

Zoning decisions can fall under this standard when government action to restrict use is "arbitrary and irrational." *Neiderhiser v. Borough of Berwick*, 840 F. 3d 213, 218 (3d Cir. 1988) (finding that a denial of a permit for building a store was "arbitrary and irrational" because the only reason for denial was the fact that the video store offered pornographic films); *see also Indep. Enters. Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F. 3d 1165, 1180 (3d Cir. 1997) (holding that a substantive due process claim applies only when a constitutionally protected interest like landownership is involved, even if the decision appears "arbitrary and irrational."). When substantive due process standards are applied to zoning decisions, a plaintiff must allege more than "the kind of disagreement that is frequent in planning disputes." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004). This standard should be a high one, since a substantive due process claim should not "[convert] federal courts into super zoning tribunals." Id. at 285. To implicate due process, such a claim must contain "allegations of corruption or selfdealing" or evidence that officials tried "to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or"

had "some bias against an ethnic group," or performed a "virtual 'taking.'" *Id.* at

286; *see also Maple Props., Inc. v. Twp. of Upper Providence*, 151 Fed. Appx.

174, 179 (3d Cir. 2005) (finding that zoning decisions violate due process when

they involve "corruption, self-dealing, or a concomitant infringement on other

fundamental individual liberties, resulting in harms that cannot be adequately

rectified by pre- or post-deprivation proceedings.").

In this matter, the Zalogas are bringing exactly the type of claim that the

United States Court of Appeals for the Third Circuit warned about in *Eichenlaub,*

*supra.*  The Zalogas claim is premised on their failed theory that sending surveyors

to their property was "conscience shocking." There is absolutely no evidence of

corruption, self dealing, taking, or bias.   It is certainly understandable that the

Zalogas have a heightened concern about strangers on or around their property

given Dr. Zaloga's position as a prison physician.  However, that heightened fear

does not convert a routine survey of property (an issue, incidentally, brought by

the Zalogas, in the Lackawanna County Court of Common Pleas) into a

substantive due process violation. To allow this claim to proceed to trial would

invite an influx of federal claims on routine municipal actions.   This claim is

dismissed.

### 3.  Count 3: Conspiracy pursuant to § 1983
### and
### Count 4: Civil conspiracy pursuant to state common law

The conspiracy claims will survive the motion for summary judgment in the same manner as the retaliation claims against Defendant Mercatili.  Dr. Zaloga set forth ample, disputed facts that would allow a jury to find that Mercatili and Segilia acted in concert to retaliate against Dr. Zaloga and CCI by attempting to block the prison contract renewal for Dr. Zaloga's outspokenness as to their re-nomination petitions.

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 19993) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'" *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003),

*citing  Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-8 (1997) (citation and

internal quotations marks omitted) (*cited in Allegheny General Hosp. v. Philip*

*Morris, Inc.*, 228 F.3d 429, 446 (3d Cir.2000)).   Additionally, the Pennsylvania

Supreme Court stated that there must have been malicious intent.

> To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *See Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335 (1971); *Fife v. Great Atlantic and Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24 (1947); Bausbach v. Reiff, 244 Pa. 559, 91 A. 224 (1914); *Baker v. Rangos*, 229 Pa.Super. 333, 324 A.2d 498 (1974). Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy. *Miller v. Post Publishing Co.*, 266 Pa. 533, 110 A. 265 (1920); *Miller v. Harvey*, 215 Pa. 103, 64 A.2d 330 (1906); *Irvine v. Elliott*, 206 Pa. 152, 55 A.2d 859 (1903). This unlawful intent must be absent justification. The test was stated in *Rosenblum v. Rosenblum*, 320 Pa. 103, 108-09, 181 A. 583, 585 (1935):
>
> > Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, Was it done with or without "just cause or excuse"? If it was bona fide done in the use of a man's own property such legal justification would exist not the less because what was done might seem to others to be selfish or unreasonable.  But such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979).

### III.  CONCLUSION:

For all of the foregoing reasons, the Defendants Motion for Summary Judgment will be granted in part and denied in part.

The only remaining claims and parties to this action will be Edward Zaloga and Correctional Care Inc, Plaintiffs, against Joseph Mercatili, Defendant, for three claims – retaliation in violation of the First Amendment pursuant to 42 U.S.C. §1983; conspiracy under 42 U.S.C. § 1983; and civil conspiracy, pursuant to state common law.  The remaining Defendants and Plaintiff Jeanne Zaloga are dismissed as parties.

An appropriate Order in accordance with this Memorandum will follow.

BY THE COURT:

 s/ Matthew W. Brann
Matthew W. Brann
United States District Judge